UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
HUAN WANG,                                                    REPORT AND
                                    Plaintiff,                RECOMMENDATION

        - against -
AIR CHINA LIMITED, et al.                                     17-CV-6662 (MKB) (JO)
                                    Defendants.
---------------------------------------------------------------X

James Orenstein, Magistrate Judge:

        Plaintiff Huan Wang ("Wang") has accused the defendants Air China Limited ("Air China")

and LB Oceanfront Corp. ("Oceanfront") of gender-based discrimination and retaliation in violation

of federal, state, and municipal law. *See* Docket Entry ("DE") 1 (Complaint); 42 U.S.C. § 2000e *et seq.*

(Title VII of the Civil Rights Act of 1964) ("Title VII"); N.Y. Exec. Law § 290 *et seq.* (New York

State Human Rights Law) ("NYSHRL"); N.Y.C. Admin Code § 8-101 *et seq.* (New York City Human

Rights Law) ("NYCHRL"). The defendants seek to dismiss the Complaint for failure to state a claim

and to transfer the case within this district to the Central Islip courthouse. DE 58 (Air China's

motion); DE 44 (Oceanfront's motion). Upon a referral from the Honorable Margo K. Brodie,

United States District Judge, I now make this report and, for the reasons set forth below,

respectfully recommend that the court dismiss the three claims under municipal law with leave to

amend and deny the motion in all other respects.

I.      Background

        A.      Facts

        I assume the Complaint's non-conclusory factual allegations to be true and construe them in

the manner most favorable to the plaintiff. *See Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015).

Starting in 2014, Wang worked at a dormitory for Air China employees that Oceanfront's

predecessor company, LB Oceanside, LLC ("Oceanside"), operated under a contract with Air China.

Oceanside's sole account was with Air China, and all of its owners and employees worked

exclusively at the Air China dormitory. Oceanside was Wang's direct employer, but Air China employees directed all of Oceanside's daily activities and made all significant decisions concerning Wang's hours, duties, and other employment conditions. In particular, an Air China employee named Congtao Li ("Li") managed the dormitory and supervised Wang. *See* Complaint ¶¶ 12-14, 17, 23-26, 28, 30-31, 33-36, 40-42.

Throughout Wang's tenure, Li subjected Wang to unwanted attention, including conduct of a sexual nature, and retaliated against her for resisting his overtures. *See id.* ¶¶ 43, 68.[1] Specifically:

- Li often called and texted Wang, both during and outside of work hours;

- Li repeatedly commented on Wang's appearance, telling her she was sexy and dressed sexy and making sexually charged comments and gestures;

- In September 2014, Li asked Wang to resign from Oceanside and work as his personal assistant;

- On May 10 2015, Li took Wang to dinner and after the dinner, despite Wang's request to be driven home, drove Wang to the beach, put his arm around her, suggested they get a hotel room together, asked her to cover her legs because he couldn't stop thinking about biting them, and told her to get a job with Air China that came with hotel accommodations so he could visit her for sexual encounters;

- In May 2015, Li entered Wang's workspace, and, blocking her exit, asked if he could carry her on his back and told her he would let her stay in a captain's room at the dormitory free of charge;

- Li asked Wang to go on vacation with him around the United States; and

- In October 2016, Li refused to allow Wang to take food served in the dormitory's dining room to her desk while she was on duty, despite the fact that other employees had been granted a similar accommodation.

*See id.* ¶¶ 44-53, 68.

---

[1] Wang initially named Li as a defendant. After attempting to settle with him and encountering difficulty attempting to serve process on him in China, *see* DE 19, she voluntarily dismissed her claims against Li on March 6, 2018. *See* DE 21.

Wang reported Li's behavior to a colleague named Zhenmin Liu ("Liu") and asked the latter to try to be present and to protect her when she had to work with Li at night. Wang also reported the harassment to Pengsheng Huang, one of Oceanside's owners. In October 2015, Huang travelled to Beijing to register a formal complaint about Li's harassing behavior with Air China. The airline responded by directing Oceanside to terminate Liu, Wang's confidante – and when Huang sought to rehire her, Air China's regional General Manager for New York, Yuelong Zhou ("Zhou") threatened to have Huang and Liu arrested if he did so. Zhou conducted his own interview of Wang that same month. *See id.* ¶¶ 55, 57-58, 60.

In November 2015, an Air China employee named Yang also interviewed Wang about her complaint.[2] In February 2016, Wang learned that Air China had instructed another Oceanside owner, Hui Yu, to replace Wang with a male. Wang, who had received no complaints about her job performance before she protested Li's harassment, warned Yu that she would sue Air China if she was terminated. *See* Complaint ¶¶ 59, 62-63, 65.

Oceanside did not directly terminate Wang. Instead, as Li continued to harass Wang without any intervention from Air China, Yu incorporated a new company – defendant Oceanfront – to accomplish the same result in a circuitous way. In the late Fall of 2016, Air China terminated its contract with Oceanside and then awarded the contract to manage the airline dormitory to Oceanfront. Yu's new and similarly named company essentially recreated Oceanside in all respects but one. Like its predecessor, Oceanfront's sole account was with Air China, Air China directed all of Oceanfront's daily activities, and all of its owners and employees worked exclusively in the Air China dormitory. Indeed, Oceanfront's employees were the same people that had worked for

---

[2] The Complaint does not mention Yang's given name, which other documents in the record reveal to be Liyong. Although the airline describes him as "the director of discipline in the flight corp. [sic] division of Air China," DE 49 at 2, it contends that he serves in that role by virtue of his position as a member of China's Communist Party, and not as an airline employee or officer. *See id.* at 2-3.

3

Oceanside – with the sole exception that Oceanfront did not hire Wang. When Wang confronted Yu about hiring back all the male employees but not her, Yu responded that it was Air China's decision to do so, and that the airline had made the decision in February 2016 when she threatened to sue if fired. *See id.* ¶¶ 27, 29, 32, 62, 66-74.

    B.    <u>Proceedings</u>

    On February 8, 2017, Wang filed a sexual harassment charge with the United States Equal Employment Opportunity Commission (the "Commission" or "EEOC") accusing both Air China and Oceanside of unlawful sex discrimination, sexual harassment, and retaliation. See DE 36-1 (declaration of Air China's counsel) ("Catafago Decl."); DE 36-4 ("EEOC Charge").[3] More than 180 days later, on August 16, 2017, the Commission had not yet resolved the charge and, at Wang's request, issued a letter advising her of her right to file suit. *See* Catafago Decl. ¶¶ 6-7; DE 1-3 (letter, attached as exhibit to the Complaint). Wang timely filed the instant Complaint on November 15, 2017, asserting eight causes of action. The first cause of action accuses Air China of violating Title VII by discriminating against Wang on the basis of sex and subjecting her to a hostile work environment. *See* Complaint ¶¶ 77-86. The second accuses both defendants of violating Title VII by retaliating against Wang for protesting such discrimination. *See id.* ¶¶ 87-94. The third and fourth

---

[3] The Complaint neither specifies the date on which Wang filed her administrative charge nor identifies the respondents. However, the pleading does explicitly refer to the charge, which is integral to its allegations about Wang's compliance with procedural requirements of her claims. The court may therefore consider its contents in resolving the motions to dismiss. *See, e.g., George v. Nationstar Mortg., LLC,* 2017 WL 3316065, at *3 (E.D.N.Y. Aug. 2, 2017) (in assessing a motion under Fed. R. Civ. P. 12(b)(6), the court limits its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken" as well as "documents that, although not incorporated by reference, are integral to the complaint") (internal citations and quotation marks omitted). Moreover, having placed the document before the court, Air China cannot object to its consideration. As discussed below, however, the court should disregard the remaining extrinsic documents on which the parties purport to rely.

causes of action assert similar claims against both defendants under the NYSHRL, and the fifth asserts that each defendant violated the NYSHRL by aiding and abetting other defendants' violations of that law. *See id.* ¶¶ 95-101, 102-05, 106-09. The sixth, seventh, and eighth causes of action assert similar claims of discrimination, harassment, retaliation, and aiding and abetting against both defendants under the NYCHRL. *See id.* ¶¶ 110-15, 116-19, 120-23.[4]

Both defendants now seek to dismiss the Complaint for failure to state a claim and purportedly to change venue (although what they really seek with respect to venue is to transfer the case within this district to the Central Islip courthouse). *See* DE 58 (Air China's motion); DE 44 (Oceanfront's motion).[5] The parties have fully briefed each motion. *See* DE 58 ("AC Memo."); DE 42 ("AC Opp."); DE 38-3 ("AC Reply"); DE 44 ("O Memo."); DE 46 ("O Opp.").[6] The court referred the motions to me by order dated May 24, 2018.

II.    Discussion

A.    Applicable Law

A court considering a motion to dismiss for failure to state a claim must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman*, 794 F.3d at 313 (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). To survive a motion to dismiss, a complaint's allegations must suffice

---

[4] In asserting the aiding and abetting claims under state and municipal law, Wang asserts not only that Air China and Oceanfront aided and abetted each other in violating the pertinent statutes, but that each also aided and abetted former defendant Li when he committed such violations. *See id.* ¶¶ 108, 122.

[5] Oceanfront's filing dated June 29, 2018, is styled as a "Motion" but includes only a supporting memorandum. *See id.* Oceanfront appears never to have filed the required Notice of Motion. *See* Loc. Civ. R. 7.1(a)(1). While the court could deny the motion on that basis or deem Oceanside not to have filed a procedurally sufficient motion at all, I will analyze the parties' filings on the assumption that the court will resolve the purported motion on the merits.

[6] Oceanfront did not file a reply to Wang's opposition to its motion.

to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the facts alleged support "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the Complaint's sufficiency, the court must distinguish factual contentions, which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted, from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to the challenged complaint itself. *See Faulker v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). A court may consider the pleading's factual allegations, documents appended to or incorporated by reference in the complaint, and documents that are integral to the complaint even if not incorporated by reference. *See*, *e.g.*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F. 3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). However, the plaintiff must rely on the terms and effects of these documents when drafting the complaint; "mere notice or possession [of such documents] is not enough" to allow the court to consider extrinsic evidence. *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002).

A court "may also take judicial notice of public records integral to the complaint but not attached to it, so long as [it] does not use such records to establish the truth of the matter asserted therein." *John v. Lewis*, 2017 WL 1208428, at *3 (E.D.N.Y. Mar. 31, 2017) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)) (further citations omitted). "If the court takes judicial notice of a document, it does so for its existence, 'but not for the truth of the matters asserted.' … Thus, factual findings in other court proceedings are generally not subject to judicial notice." *B & R Supermarket, Inc. v. MasterCard Int'l Inc.*, 2018 WL 4445150, at *5 (E.D.N.Y. Sept. 18, 2018) (Brodie, J.).

The court "need not consider other information outside the pleadings[.]" *George*, 2017 WL 3316065, at *3. I recommend that the court exercise that discretion and decide the dismissal motions now before it without resort to any extrinsic evidence (aside from the EEOC Charge, which is integral to the Complaint rather than extrinsic to it). Air China begins its opening memorandum with an entirely inappropriate discussion of extrinsic matters that it appears to believe bear on Wang's credibility (as well as on the personal conduct of a non-party individual whom Air China has chosen to identify by name). *See* AC Memo. at 3 & n.5; *see also* O Memo. at 6-7 (relying on Air China's extrinsic evidence). Such information simply has no bearing on the sufficiency of the Complaint and the court should therefore disregard it. The defendants likewise seek to have the court consider transcripts of audio recordings that are extrinsic to the Complaint. *See* AC Memo. at 5 n.7 & 7-8; *see also* O Memo. at 7. They argue that the court should consider such evidence "[b]ecause [Wang's] EEOC charge is integral to the Complaint and because the charge (falsely) describes this recording[.]" AC Memo. at 5 n.7. I disagree: the court may of course consider the contents of the EEOC charge itself, but that does not open the door to considering evidence submitted in support of the administrative charge. Similarly, Air China seeks to rely on a transcript of its own interview of Wang, on the ground that Wang noted the occurrence of the interview in her Complaint. See AC Memo. at 8; Complaint ¶ 59. Again, such evidence is not properly before the court on a motion to dismiss, and I disregard it in the analysis below. For the same reason, I also disregard the extrinsic evidence on which Wang relies – in the form of her own declaration of facts not alleged in the Complaint – in litigating the motions to dismiss. *See* DE 42 at 34-36 (appended to AC Opp.) ("Wang Decl.").[7]

---

[7] Though a court need not consider information outside the pleadings, where it does not exclude extraneous information, it must give notice to the parties and convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). *See Paredo v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) (noting that before converting a motion to dismiss into a motion for

B.    Title VII Claims

    1.    Procedural Issues

The defendants raise several procedural objections to the Title VII claims. They contend those claims are premature because Wang failed to exhaust the administrative remedies available to her. More specifically, although the record is clear that Wang filed a charge with the EEOC, the defendants complain that she did not provide them with sufficient notice of the charge or satisfy the requirement of verifying it. They further claim that Wang has not timely asserted her rights because she did not file suit until after more than 90 days had passed after receiving notice of her right to do so, and until more than 300 days after the claimed violation of her rights. As explained below, I conclude that all of those arguments lack merit.

    a.    Notice

Both defendants complain that they did not receive formal notice of Wang's EEOC charge: specifically, Wang used an incorrect corporate name and address for Air China and did not name Oceanfront at all. *See* AC Memo. at 15; AC Reply at 6; O Memo. at 11-12. They both contend that the lack of formal notice prejudiced them because it denied them an opportunity to seek conciliation in the administrative process. It is difficult to see how they suffered any such prejudice: neither defendant has sought any opportunity to achieve conciliation here (and both have employed scorched-earth tactics throughout the litigation that suggest a lack of interest in meaningful

---

summary judgment, "the court [must] give sufficient notice to an opposing party and an opportunity for that party to respond"); *see also Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202-03 (2d Cir. 2013) ("The conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced[d] and mandatory.") (internal citation omitted). If the court adopts my recommendation to disregard the parties' extrinsic evidence, it may decide the dismissal motions without notifying the parties of its intention to convert.

conciliation), and in any event the EEOC, in their absence, declined to take any action against either defendant.

More fundamentally, the lack of notice is not fatal to Wang's claims. The pertinent statutory notice provision operates on the Commission itself, not the individual who files the charge – although the defendants' selective quotation of that statute carefully elides that fact. *See* 42 U.S.C. § 2000e-5(b) ("the Commission shall serve a notice of the charge … on the employer"); *id.* § 2000e-5(e)(1) ("notice of the charge … shall be served upon the person [charged]"); AC Memo. at 15 (citing both provisions but quoting only the latter); O Memo. at 12 (same). "The majority of circuit courts agree, having either held, or suggested, that the EEOC's failure to comply with its statutory duty of providing notice to Title VII respondents does not prejudice a plaintiff's ability to maintain a Title VII claim against those respondents in federal court." *Robinson v. Macy's*, 2014 WL 6997598, at *8 (S.D.N.Y. Dec. 5, 2014) (collecting cases from other jurisdictions and citing dicta from *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 107, n.8 (2d Cir.1978)).[8] I therefore recommend against dismissal on the basis of a lack of notice of the EEOC charge.[9]

---

[8] Moreover, as the Supreme Court recently clarified, "Title VII's charge-filing instruction is not jurisdictional." *Fort Bend Cty., Texas v. Davis*, 2019 WL 2331306, at *2 (U.S. June 3, 2019).

[9] Even if dismissal on this ground were appropriate – which I conclude it is not – it would have to be without prejudice. Wang's extrinsic evidence includes her assertion that Air China, at least, had actual notice of the administrative proceeding because she communicated with Air China's counsel about it during its pendency and sent him a copy of the notice. *See* AC Opp. at 13-14 (citing Wang Decl. ¶ 4). In his own extrinsic declaration, Air China's counsel likewise makes clear that he and his client were aware of the EEOC charge while it was pending; indeed, Air China subpoenaed information about it in the course of contemporaneously litigating a separate state court action. *See* Catafago Decl. ¶¶ 8-9; *see also* AC Memo. at 15 (complaining only that as a result of Wang's error in addressing her notice to Air China – using an older version of the company's official name and a street address that included a one-digit error – it "never received any communication *from the EEOC*") (emphasis added). It thus appears not only that Air China's purported outrage over the lost opportunity to pursue conciliation is feigned but also that Wang could amend her Complaint to cure the claimed notice defect.

b.   Verification

Both defendants further seek dismissal on the ground that Wang failed to verify her EEOC charge. *See* AC Memo. at 15-16; O Memo. at 12-13; 42 U.S.C. § 2000e-5(b) (providing that a charge of unlawful employment practices "shall be in writing under oath or affirmation"); *see also* AC Opp. at 16 (acknowledging the lack of verification). The defendants acknowledge that the Second Circuit has never addressed this issue, but purport to find support for their position in two decisions, one by this court and one by the Supreme Court. *See* AC Memo. at 15-16 (citing *Cherry v. New York City Hous. Auth.*, 2017 WL 4357344 (E.D.N.Y. Sept. 29, 2017) (Brodie, J.); *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008)); O Memo. at 12-13 (same). Their reliance on those decisions is misplaced: both cases make clear that the pertinent inquiry is whether the complaining party's submission to the EEOC can be "'reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.'" *Cherry,* 2017 WL 4357344, at *8 (quoting *Holowecki*, 552 U.S. at 402). Wang's charge to the EEOC manifestly satisfies that requirement. As a result, I conclude that the document's lack of formal verification is not a basis to dismiss the Complaint.

c.   Timeliness of the EEOC Charge

Air China further contends that Wang's Title VII claims are untimely because she did not raise them with the EEOC within 300 days of the allegedly unlawful conduct. *See* AC Memo. at 17-18. Wang filed her charge on February 8, 2017. She may therefore proceed with her Title VII claim if the conduct about which she complained continued until at least April 14, 2016. *See* 42 U.S.C. § 2000e-5(e)(1).

Air China's argument on this point rests on an attempt at misdirection: Air China ignores the allegations in the Complaint itself and instead asserts that "Wang's EEOC Charge … and the investigation conducted by Air China … reveal that the last instance of 'harassment' occurred in July

2015[.]" AC Memo. at 17. Framing the matter in this way ignores the proscription against reliance on extrinsic evidence as well as the presumption of the truth of the Complaint's allegations. The issue at this stage is not what Air China believes it can prove, but whether Wang has pleaded a viable claim.

In the challenged pleading, Wang explicitly alleges that the harassment of which she complains continued through October 2016. *See* Complaint ¶¶ 67-68. Such an allegation, however imprecise, suffices to withstand a motion to dismiss. *See, e.g., Barrows v. Seneca Foods Corp.*, 512 F. App'x 115, 116-17 (2d Cir. 2013). I therefore conclude that the court should not dismiss the Title VII claims on the ground that Wang's charge was untimely.

d.   Failure to Formally Name Oceanfront in the EEOC Charge

In a similar but conceptually distinct challenge, Oceanfront challenges the Title VII claims on the ground that Wang did not name the company as a respondent in her EEOC charge and that the agency therefore did not name the company in its right to sue letter. *See* O Memo. at 10-14. However, given the Complaint's allegations about Air China's control of Oceanfront and the extent to which the two companies coordinated their efforts to discriminate and retaliate against Wang, *see* Complaint ¶¶ 70-74, 90-91, 104, as well as the corresponding allegations explicitly naming Oceanfront in Wang's *pro se* complaint to the Commission, *see* EEOC Charge at 1 & 10-12,[10] such argument does not suffice to warrant dismissal. *See, e.g., France v. Touro Coll.*, 2016 WL 1105400, at *5-6 (E.D.N.Y. Feb. 16, 2016) (plaintiff's inclusion of defendant's name from caption of EEOC

---

[10] In the Intake Questionnaire that serves as her EEOC Charge, Wang responded to the prompt, "I believe that I was discriminated against by the following organizations(s)" by checking one box labeled "Employer" and another labeled "Other (Please Specify)." In the line for describing the latter, Wang wrote "Employer's Only Customer." *Id.* at 1. Given the detailed factual assertions in the written narrative that follows the intake form, that response clearly refers to Air China, Oceanside, and Oceanside's immediate successor, Oceanfront. The fact that Wang initiated her administrative charge by means of an Intake Questionnaire rather than a more formal charging instrument does not undermine the viability of her claims. *See Alexander v. City of New York*, 957 F. Supp. 2d 239, 243 (E.D.N.Y. 2013) (noting "[w]here the intake questionnaire contains a request for the agency to act, it may be considered a 'charge' for the purpose of ascertaining the statutory period").

11

charge, and the resulting failure to name that defendant in the right-to-sue letter, not a basis for dismissal) (report and recommendation), *adopted*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016). I therefore conclude that Oceanfront is not entitled to dismissal based on the content of the EEOC charge.

e.    Timeliness of the Complaint

The defendants also contend that the Title VII claims are untimely because Wang failed to file her Complaint within 90 days of receiving the EEOC's right-to-sue letter. *See* AC Memo. at 11; O Memo. at 17; 42 U.S.C. § 2000e-5(f)(1). The letter is dated August 16, 2017. *See* DE 1-3. Assuming the Commission mailed it that day, Wang presumably received it on Saturday, August 19, 2017. *See* Fed. R. Civ. P. 6(d) (extending applicable period by three days where service of pertinent document is by mail); *see, e.g.*, *Lewis v. Univ. Towers Apartment Corp.*, 2017 WL 1373879, at *2 (E.D.N.Y. Apr. 13, 2017) (Brodie, J.) (citing cases supporting such presumptions). Wang timely filed the Complaint less than 90 days later, on November 15, 2017. *See* DE 1.

Air China argues that the presumption of three-day delivery is rebutted because the Complaint alleges that Wang received the EEOC's letter "on or about August 16, 2017." Complaint ¶ 7; *see* AC Reply at 8. I wholly disagree for several reasons. First, the allegation on which Air China purports to rely is plainly not an allegation that Wang received the letter precisely on August 16, 2017 (which would appear highly unlikely, as that would mean the letter was received the day it was sent). Instead, Wang explicitly provides a mere approximation of the date. Second, while Air China is content to rely on one of the Complaint's allegations (albeit a willfully distorted version of that allegation) in making its argument, it simply ignores the very next one that is far more relevant (and entirely consistent with the allegation that Air China distorts): "This suit is being brought within ninety (90) days of receipt of" the right-to-sue letter. Complaint ¶ 8. Third, and most substantively, although the cases interpreting the applicable rule often presume that mail is delivered in three days,

the rule's text is clear that the actual delivery date of a mailed letter is wholly irrelevant to the determination of the filing deadline: even if service by mail is instantaneous, the recipient nevertheless gets a three-day extension of the otherwise applicable deadline. *See* Fed. R. Civ. P. 6(d) ("When a party must act within a specified time after being served and service is made [by mail], 3 days are added after the period would otherwise expire[.]"). I therefore conclude that the Wang timely filed her Complaint.

### 2.    Air China's Status as Wang's Employer

Air China challenges Wang's Title VII claims on the ground that it cannot be considered her employer under applicable law. *See* AC Memo. at 21-23. Its argument, however, does not address the Complaint's factual allegations about the relationship, but instead rests exclusively – and improperly – on extrinsic evidence. *See id.* at 23 (citing Catafago Decl. Exs. K, N); AC Reply at 5-6 (same). At the pleading stage, however, the court must assess the viability of the claims based on the Complaint's allegations. Applying that standard, Air China's challenge must fail. Wang explicitly alleges facts that, if true, would allow a jury to conclude that Air China was her joint employer. In particular, she alleges that Air China and its employee Li – through Air China's contract with Oceanside, and then with its successor Oceanfront – directed and controlled the scheduling, activities, and discipline of all employees at the dormitory where she worked. *See* Complaint ¶¶ 23-36. Further, though Oceanside operated the dormitory pursuant to a subcontract with Air China, Wang alleges that all Oceanside (and later Oceanfront) owners and employers worked exclusively at the Air China dormitory. Complaint ¶¶ 28-29. Wang has thus alleged facts sufficient to demonstrate that Air China is liable as a joint employer. *See, e.g., Hassanein v. Gino's Italian Rest. on 5th*, 2017 WL

4350515, at *7 (E.D.N.Y. Mar. 27, 2017) ("The existence of a joint employer relationship is essentially a factual issue that cannot be resolved based on the complaint alone.").[11]

### 3.    Discrimination and Hostile Work Environment

In challenging the merits of Wang's Title VII discrimination claim, Air China relies exclusively on extrinsic evidence.[12] In short, Air China contends that Wang is so dishonest that she is not entitled to the usual presumption attendant to a dismissal motion that a complaint's non-conclusory factual allegations are true, and that the evidence it cites supports a different interpretation of the events at issue than the one Wang embraces. *See* AC Memo. at 13-14, 18-19; AC Reply at 1-5. I have already explained above why I conclude that the court should not consider the extrinsic evidence on which the defendants rely. But I would recommend that the court deny the motions even if it were to consider the extrinsic evidence because that evidence would do no more than raise a triable question – which exists in any event – as to the veracity of Wang's allegations.

Air China goes beyond the Complaint to breathlessly report that Wang has previously been convicted of a crime and that she has previously had a consensual relationship with and then sued a married non-party. *See* AC Memo. at 2-3. Assuming those facts to be true, however, does not render Wang untruthful as a matter of law or her factual allegations about the defendants' conduct inherently implausible. Similarly, the defendants' interpretation of portions of an unauthenticated

---

[11] Converting the instant motion to one for summary judgment and considering the extrinsic evidence would not compel a different conclusion. The relevant considerations in determining joint employment "include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Vitti v. Macy's Inc.*, 758 F. App'x 153, 156 (2d Cir. 2018) (quoting *N.L.R.B. v. Solid Waste Servs. Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)); *Hassanein*, 2017 WL 4350515, at *6 (same). Air China would have the burden of showing that there is no genuine issue of material fact precluding a determination in its favor on those factors. *See Krasner v. Episcopal Diocese of Long Island*, 431 F. Supp. 2d 320, 325 (E.D.N.Y. 2006). The apparently undisputed fact that Air China investigated Wang's claim of workplace harassment and twice interviewed her in doing so, *see* Complaint ¶¶ 58-59, AC Memo. at 8-9, O Memo. at 3, appears to foreclose such a finding.

[12] Wang does not assert a Title VII discrimination claim against Oceanfront. I discuss Oceanfront's challenge to the parallel claim under the NYSHRL below.

transcript of a recording of Wang's conversation with Li may persuade a fact-finder, but it cannot trump Wang's factual allegations, either at the pleading stage or on summary judgment.[13] Thus, even if the court were to convert the dismissal motions to summary judgment motions, I would conclude that the extrinsic information on which the defendants rely would not suffice to warrant any relief other than an opportunity to confront Wang with such evidence at trial. I therefore respectfully recommend that the court deny Air China's motion to dismiss the first cause of action asserting a discrimination claim under Title VII.[14]

4.    Retaliation

Air China contends that Wang's retaliation claim fails because she complained about being harassed in October 2015 and was not terminated until over a year later, in December 2016. *See* AC Memo. at 25. The argument relies on distortions of both the law and the challenged pleading. First, Air China acknowledges that the case law of this circuit sets "no bright-line rule for how close in time the protected activity and the adverse employment action must be[.]" *Id.* (citing *Gorman-Bakos v.*

---

[13] Air China makes the conclusory assertion that "Wang's own tape recording demonstrates that she suffered no actionable harassment." AC Memo. at 19. In so arguing, Air China neither explains the specific portions of the recording that it believes establishes the proposition as a matter of law nor cites any legal authority for the proposition that one piece of evidence inherently overrides all others. The lapse is understandable as Air China's position is contrary to established law: whether the recording establishes a fact is a question only a fact-finder may decide.

[14] Because Air China's attack on the merits of the Title VII discrimination claim rests solely on its improperly presented extrinsic evidence, the court need not consider whether the Complaint's allegations, taken as true, suffice to state a claim. Air China understandably makes no such argument: Wang clearly alleges conduct that suffices to state a claim for discrimination on a theory that Air China's employee Li subjected Wang to a hostile work environment so severe and pervasive as to trigger Air China's liability. *See* Complaint ¶¶ 43-56, 67-68 (alleging Li's repeated, unwelcome sexually-charged comments and suggestions to engage in sexual activity over a period of years including two instances in which he explicitly propositioned her); *see, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Alfano v. Costello*, 294 F. 3d 365, 374 (2d Cir. 2002); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Because the Complaint clearly states a Title VII discrimination claim on a theory of hostile work environment, the court need not address at this stage Wang's fallback theory that the Complaint can also be read to support a Title VII discrimination claim on a *quid pro quo* theory. *See* AC Opp. at 7-8.

*Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)). But Air China then immediately goes on to suggest that a three-month period normally warrants dismissal. *See id.* (citing cases). However, as *Gorman-Bakos* makes clear, the issue in not so simple. The plaintiff's burden is to show causation – that is, that her engagement in protected activity caused the adverse action. The time between the two events can serve as a proxy for that showing of causation, but the context matters: the longer the time span between protest and adverse action, the less persuasive timing alone will be in establishing a causal link. *See id.* at 554. In emphasizing that there is no bright-line rule, the court explicitly pointed to cases where a time lapse of more than a year did not foreclose a retaliation claim. *See id.* at 554 & n.5 (citing, *inter alia*, *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999) ("abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier") (quoted description supplied by *Gorman-Bakos* court); *Bernhardt v. Interbank of N.Y.*, 18 F. Supp. 2d 218, 226 (E.D.N.Y. 1998) ("eleven months between protected activity and firing might suggest relationship where defendant had possible reasons for delaying firing") (same)).[15] Thus, Air China's suggestion that the amount of time between Wang's complaint of harassment and her termination is, standing alone, a basis to dismiss her retaliation claim is simply at odds with the case law on which it purports to rely.

Moreover, Air China's argument rests on an unduly crabbed reading of the Complaint. In particular, it ignores the following allegations: Wang's initial complaints in late 2015 resulted in the termination of her confidante Liu; in February 2016, Yu (an owner of both Oceanside and Oceanfront) met with Air China and was told to replace Wang with a male employee; Wang then

---

[15] After the circuit court issued cited *Bernhardt* in its *Gorman-Barkos* opinion, the district court issued an amended opinion in *Bernhardt* that altered and superseded the earlier version "only insofar as it deletes certain references to background material not pertinent to the discussion or result." *Bernhardt v. Interbank of New York*, 2009 WL 255992, at *1 (E.D.N.Y. Feb. 3, 2009). In the amended version, as in the original, the court made clear that the eleven-month period between the protected activity and the alleged retaliation did not foreclose a retaliation claim as a matter of law. *See id.* at *6.

16

threatened to sue if she was fired; and Yu responded to that threat by forming Oceanfront to accomplish Wang's ouster without having to fire her. *See* Complaint ¶¶ 58-66. Finally, Wang explicitly alleges that Yu formed Oceanside precisely for the purpose of effectuating Wang's termination and that he "confirmed that Air China directed her termination because of her complaint against Mr. Li's sexual harassment and discrimination." *Id.* ¶ 74. These allegations directly plead a causal relationship between Wang's complaints of discrimination and the defendants' retaliatory actions, and they do so in a fashion that explains the longer time span in precisely the way that the *Gorman-Bakos* opinion acknowledged as a viable theory in its citation to *Bernhardt*.[16]

Oceanfront argues that the retaliation claim fails because Wang has not made plausible, non-conclusory allegations of a causal link between her complaints of harassment and her termination. *See* O Memo. at 14-17. To some extent, such argument reflects nothing more than an unwillingness to acknowledge the Complaint's allegations: as summarized above, they set out in specific detail a plausible narrative that goes from Li's harassment, to Wang's complaints about it, to a retaliatory termination that – as Oceanfront's owner Yu confirmed – the defendants attempted to mask behind the sham of creating Oceanfront to replace Oceanside in every respect except for Wang's employment. To the extent Oceanfront seeks to craft an alternate narrative, it impermissibly relies on extrinsic evidence to do so. *See* O Memo. at 16. I therefore respectfully recommend that the court deny Oceanfront's motion on this point as well.[17]

---

[16] In addition, Wang also alleges – and Air China wholly ignores – that Air China's employee Li "retaliated against [Wang] by making her working conditions intolerable[,]" citing, as an example, his conduct in October 2016. Complaint ¶ 68.

[17] If the court adopts my recommendation to deny the motions to dismiss Wang's Title VII claims, it need not reach the question of supplemental jurisdiction. If the court dismisses all of the Title VII claims, it would of course have the discretion to decline jurisdiction over the remaining claims, and, consistent with applicable law, I would normally recommend doing just that. *See* 28 U.S.C. § 1367(c)(3). However, because the parties have now completed discovery, briefed summary judgment motions, and can quickly try any remaining claims in this court, I conclude that it would be more efficient for all parties, and conserve judicial resources, to retain jurisdiction over any non-

C.    NYSHRL Claims

For the most part, the defendants' substantive challenges to Wang's NYSHRL claims fail for the same reasons as the corresponding challenges to the Title VII claims, because federal courts analyze such claims identically. *See*, *e.g.*, *Hyek v. Field Support Servs., Inc.,* 461 F. App'x 59, 60 (2d Cir. 2012); *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 264 (E.D.N.Y. 2015) (Brodie, J.). The defendants raise only two challenges to Wang's NYSHLR claims independent of their arguments on the Title VII claims. As discussed below, neither has merit.

First, Oceanfront argues that all of the allegedly discriminatory acts occurred before it came into existence and that it never employed Wang. *See* O Memo. at 10. True enough, but that does not end the inquiry. As Wang argues in response, Oceanfront may nevertheless bear responsibility for Oceanside's involvement in the alleged discrimination as the successor to that entity. *See* O Opp. at 5-8. I agree: the Complaint alleges sufficient facts to meet the requirements of the "substantial continuity" test for successor liability. *See*, *e.g.*, *Santiago v. Crown Heights Ctr. for Nursing & Rehab.*, 2017 WL 9482107, at *7 (E.D.N.Y. Feb. 24, 2017) (report and recommendation), *adopted in pertinent part*, 2017 WL 4410807 (E.D.N.Y. Sept. 30, 2017) (citing, *inter alia*, *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1089-91 (6th Cir. 1974); *EEOC v. Nichols Gas & Oil, Inc.*, 688 F. Supp. 2d 193, 200 (W.D.N.Y. 2010); *EEOC v. Sage Realty Corp.*, 507 F. Supp. 599 (S.D.N.Y. 1981). The relevant factors for that test include:

> 1) whether the successor employer uses the same plant; 2) the same or substantially same employees; 3) the same or substantially similar supervisors; 4) the same machinery, equipment, and methods of production; 5) whether there has been substantial continuity in the operation of the business; 6) whether the same jobs and

---

federal claims that survive the motion to dismiss. *See*, *e.g.*, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("we have upheld the exercise of supplemental jurisdiction even when all federal-law claims were eliminated prior to trial, for example, in long-pending cases presenting no novel issues of state law where 'discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial'") (internal quotation marks and citations omitted).

> substantially same working conditions continue; 7) whether the new employer
> produces the same product; 8) whether the new employer has notice of the claim;
> and 9) whether the predecessor company has the ability to provide relief.

*Id.* (citations omitted). Wang's allegations present a paradigmatic case for finding successor liability

under that standard: she alleges that Oceanfront is the same company in every material respect

except for its refusal to hire her – and that it was created specifically for the purpose of retaliating

against her for protesting its predecessor's unlawful conduct. I therefore conclude that the

Complaint alleges a viable NYSHRL cause of action for discrimination against Oceanfront on a

theory of successor liability.

Second, both defendants challenge Wang's request for punitive damages under the

NYSHRL, and correctly note that the statute does not provide for such relief. *See* AC Memo. at 26,

O Memo. at 21; *Farias v. Instructional Sys., Inc.* 259 F.3d 91, 101 (2d Cir. 2001) ("It is undisputed that

the New York State Human Rights Law does not provide for punitive damages." (citing *Weissman v.*

*Dawn Joy Fashions*, 214 F.3d 224, 235 (2d Cir. 2000)). The observation is of no moment, however,

because Wang does not assert a free-standing cause of action for punitive damages under the

NYSHRL. Instead, in one of her three claims under that statute, she asserts that because the

defendants' discriminatory actions were done with a particular state of mind, she is entitled not only

to compensatory damages but also to punitive damages. *See* Complaint ¶¶ 98-101. The unavailability

of one of those forms of relief entitles the defendants to trial-related remedies to guard against an

improper award of punitive damages under the NYSHRL (such as the exclusion of evidence and

argument relevant only to such an award under that statute), but it does not require the dismissal of

any claim. I therefore respectfully recommend that the court deny as moot this portion of the

defendants' motion.[18]

---

[18] In their briefs, the defendants clarify that rather than dismissal, they want the court to strike the
paragraph of the Complaint in which Wang seeks punitive damages. Indeed, each defendant
instructs the court that it "must" do so. AC Memo. at 26; O Memo. at 21. However, neither

D.    NYCHRL Claims

To state a claim under the NYCHRL, Wang must allege that the unlawful discrimination at issue occurred or had an impact within New York City. *See, e.g., Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 182 (2d Cir. 2016) (citing *Hoffman v. Parade Publ'ns,* 15 N.Y. 3d 285, 289-90 (2010); *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012). The defendants argue that Wang cannot satisfy that requirement because she alleges that she resides in Suffolk County and that the harassment occurred at the Air China dormitory in Nassau County. *See* AC Memo. at 23-24; AC Reply at 10; O Memo. at 20-21; Complaint ¶¶ 10, 12. Wang has two responses: first, that she lived in New York City while she worked at the Air China dormitory; and second that one of the incidents of Li's unwelcome advances occurred while Li was driving her to her home in New York City. AC Opp. at 22-23 (citing Wang Decl. ¶ 8); O Opp. 19-20 (citing same and Complaint ¶¶ 47-48). Both responses improperly rely on evidence extrinsic to the Complaint: the pleading itself alleges no more than that her home was within the Eastern District of New York – an area that encompasses three counties within New York City and two counties outside of it. *See* Complaint ¶ 4. Nothing in the challenged pleading alleges or even supports an inference that at the time of the conduct at issue Wang either resided in New York City or experienced any harassing or discriminatory conduct there. Wang thus fails to state a viable claim under the NYCHRL – although it is clear even without considering extrinsic evidence that she may be able to cure the pleading defect by including in an amended complaint a more precise allegation about where within this district she resides. I therefore respectfully recommend that the court dismiss Wang's NYCHRL claims with leave to amend.[19]

---

defendant has filed a notice of motion seeking such relief. More substantively, neither has even attempted to explain how the paragraph at issue is "redundant, immaterial, impertinent, or scandalous[.]" Fed. R. Civ. P. 12(f). I therefore recommend against striking the paragraph. Allowing it to remain in the Complaint will have no effect on the parties' rights.

[19] If the court disagrees with this part of the analysis and proceeds to consider the merits of the NYCHRL claims, I respectfully recommend that the court reject the defendants' substantive

E.    Venue

Each defendant styles its motion as seeking, in addition to dismissal, a change of venue. *See* AC Memo. (docket information and cover page, both referring to its motion to change "Venue"); O Memo. (same). What they ask for, however is not a change of venue, but rather the reassignment of this action to the Central Islip courthouse. It should of course go without saying that a request for a change of venue is moot where the relief sought is to reassign a case from one judge or courthouse to another within the same judicial district. *See, e.g., United States v. Schlesinger*, 261 F. App'x 355, 360 (2d Cir. 2008) ("The Central Islip and Brooklyn courthouses are in the same venue, the Eastern District of New York."); *Brennan v. Straub*, 2003 WL 21313841, at \*1 (S.D.N.Y. June 9, 2003) (request for transfer from one courthouse to another in the same district is not a motion to change venue but instead seeks relief relating to the district's rules for division of business).

Regardless of the label the defendants attach to their request, it lacks merit. The defendants claim they are entitled to have the case reassigned to the Central Islip courthouse because they contend that, notwithstanding her assertions to the contrary, Wang resides in Suffolk County and that the events giving rise to the action occurred in Nassau County. *See* AC Memo. at 12-13; O Memo. at 17-18; Loc. Civ. R. 50.1(d)(2). I disagree. This court's guidelines for the division of business provide that "a party may move to designate a case as a Long Island case … on the grounds that such action will serve the convenience of the parties and witnesses or is otherwise in the interests of justice." Loc. Civ. R. 50.1(d)(3). In seeking reassignment, the defendants neither acknowledge nor seek to satisfy that standard; instead, they merely claim that Wang misstated facts pertinent to the original assignment when she filed suit. There is thus no basis to conclude that reassigning this case will be convenient for anyone or serve the interests of justice. Moreover, while

---

challenges, all of which track their arguments on the Title VII and NYSHRL claims, for the reasons set forth above.

the defendants may request reassignment, they are not entitled to it: as the introduction to the court's guidelines for the division of business makes clear, they "are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys." Loc. Civ. R. at 120; *see Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 634 (2d Cir. 2016) (quoting same). I therefore respectfully recommend that the court deny the requests for reassignment.

III.   Recommendation

For the reasons set forth above, I respectfully recommend that the court grant in part and deny in part the defendants' motions to dismiss and transfer venue. Specifically, I respectfully recommend that the court dismiss the Complaint's three claims under municipal law with leave to amend and deny the motions in all other respects.

IV.   Objections

Any objections to this Report and Recommendation must be filed no later than June 20, 2019. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        June 6, 2019

                                          _____/s/_____
                                          James Orenstein
                                          U.S. Magistrate Judge