UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------

HUAN WANG,

                    Plaintiff,

          v.

AIR CHINA LIMITED and LB OCEANFRONT
CORP.,

                  Defendants.

-----------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-6662 (MKB) (JO)

MARGO K. BRODIE, United States District Judge:

Plaintiff Huan Wang commenced the above-captioned action on November 15, 2017,

against Defendants Air China Limited ("Air China") and LB Oceanfront Corp. ("Oceanfront").[1]

(Compl., Docket Entry No. 1.)  Plaintiff asserts claims for sexual harassment and retaliation in

violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.* ("Title VII"), New York

State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), and New York City

Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"), and for aiding and

abetting pursuant to the NYSHRL and NYCHRL.  (*Id.* ¶¶ 77–123.)  Plaintiff claims that she was

sexually harassed by Congtao Li, an employee of Air China, and that, after she reported the

harassment, Air China and her employer, LB Oceanside Corp. ("Oceanside"), retaliated against

her by forming a new company, Oceanfront, nearly identical to Oceanside, and effectively

terminating her employment.  (*See generally id.*)

---

[1]  Plaintiff also named Congtao Li as a defendant in the action but withdrew all claims
against Li in March of 2018.  (*See* Compl., Docket Entry No. 1; Notice of Voluntary Dismissal,
Docket Entry No. 21.)

Currently before the Court are Defendants' motions for summary judgment.[2]  Plaintiff

opposes the motions.[3]  For the reasons set forth below, the Court grants in part and denies in part

Defendants' motions.[4]

## I.    Background

The following facts are undisputed unless otherwise noted.

Air China is an international airline licensed to conduct business in New York State.

(Defs. Joint Stmt. of Undisputed Facts Pursuant to L. Rule 56.1 ("Defs. 56.1") ¶ 6, Docket Entry

No. 77.)[5]  Air China owns real property in Nassau County, located at 485 West Broadway, Long

Beach, New York (the "Long Beach Property"), which it uses to house its airline crews while

---

[2]  (Air China Mot. for Summ. J. ("Air China Mot."), Docket Entry No. 75; Air China
Mem. in Supp. of Air China Mot. ("Air China Mem."), Docket Entry No. 78; Oceanfront Mot.
for Summ. J. ("Oceanfront Mot."), Docket Entry No. 79; Oceanfront Mem. in Supp. of
Oceanfront Mot. ("Oceanfront Mem."), Docket Entry No. 82.)

[3]  (Pl. Mem. in Opp'n to Air China Mot. ("Pl. Opp'n to Air China Mot."), Docket Entry
No. 83; Pl. Mem. in Opp'n to Oceanfront Mot. ("Pl. Opp'n to Oceanfront Mot."), Docket Entry
No. 87.)

[4]  Defendants have also moved to dismiss the Complaint.  (Air China Mot. to Dismiss,
Docket Entry No. 36; Air China Mem. in Supp. of Air China Mot. to Dismiss, Docket Entry No.
58; Oceanfront Mem. in Supp. of Mot. to Dismiss, Docket Entry No. 44.)  On May 24, 2018, the
Court referred the motions to Magistrate Judge James Orenstein for a report and
recommendation.  (Order dated May 24, 2018; Order dated June 29, 2018.)  By report and
recommendation dated June 6, 2019, Judge Orenstein recommended that the Court grant
Defendants' motions as to the three NYCHRL claims, with leave to amend, and deny
Defendants' motions in all other respects ("R&R").  (R&R, Docket Entry No. 91.)  By Order
dated September 6, 2019, the Court consolidated the motions, in light of the R&R filed after the
parties had submitted the fully-briefed summary judgment motions.  (Order dated Sept. 6, 2019.)
Because the Court now decides the summary judgment motions, the Court denies the motions to
dismiss as moot.

[5]  Defendants each submitted a document titled "Defendants' Joint Rule 56.1 Statement
of Undisputed Facts," which are almost identical.  (See Rule 56.1 Stmt. in Supp. of Air China
Mot. ("Defs. 56.1"), Docket Entry No. 77; Rule 56.1 Stmt. in Supp. of Oceanfront Mot., Docket
Entry No. 85.)  For purposes of this Memorandum and Order, the Court refers to the Rule 56.1
statement submitted by Air China as "Defs. 56.1."

they are in New York. (*Id.* ¶ 7.) In 2010, Air China entered into a contract with Oceanside to manage and operate the Long Beach Property. (*Id.* ¶ 8.) In March of 2014, Oceanside hired Plaintiff to work as a front desk clerk at the Long Beach Property. (*Id.* ¶ 21.) Plaintiff was employed by Oceanside for thirty months, until December of 2016. (*Id.* ¶ 23.)

### a. Plaintiff's sexual harassment allegations

Li was an employee of Air China and a manager at the Long Beach Property. (Pl. Aff. in Opp'n to Defs. Mots. for Summ. J. ("Pl. Aff.") ¶ 12, Docket Entry No. 86; Dep. of Congtao Li ("Li Dep.") 82:2–3, annexed to Decl. of Justin T. Kelton ("Kelton Decl.") as Ex. 23, Docket Entry No. 84-23.) [6] Plaintiff states that when she first met Li in August of 2014, they "had a pleasant working relationship" and were "friendly" with each other. (Pl. Aff. ¶¶ 11–12.) Starting in October of 2014, Li would "offer to use Air China's money to buy groceries for [Plaintiff] and told [her] that [she] would not have to worry about groceries if [she] were to 'live with him.'" (*Id.* ¶ 13.) Between February and May of 2015, Li asked her "several times to travel

---

[6] Plaintiff argues that Defendants "voluntarily waived" deposing her "in this matter," and that she "accordingly . . . submits with this Opposition a detailed Affidavit providing her testimony as to key factual predicates for her claims." (Pl. Opp'n to Air China Mot. 2.) Defendants object to Plaintiff's affidavit, which they contend "offer[s] a new version of facts contradicting . . . prior deposition testimony" taken in connection with other cases. (Defs. Reply 1, Docket Entry No. 89.)

"The 'sham issue of fact' doctrine 'prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony.'" *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (emphasis omitted) (quoting *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013)). However, "if there is a plausible explanation for discrepancies in a party's testimony, the court . . . should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete." *In re Fosamx Prods. Liab. Litig.*, 707 F.3d at 194 (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)). To the extent there are discrepancies between Plaintiff's affidavit and her prior deposition testimony in other cases, the Court finds that there are plausible explanations for such discrepancies. Accordingly, the Court considers Plaintiff's affidavit in deciding Defendants' summary judgment motions.

with him to see the United States," and she rejected his requests. (*Id.* ¶ 14.) In May of 2015, Plaintiff confided in Li about challenges she was experiencing in her personal life due in part to an abusive relationship she had been in, and Li "listened intently." (*Id.* ¶ 16.) As Plaintiff prepared to move out of her home, Li offered to let her store her treadmill and freezer at the Long Beach Property. (*Id.*)

Plaintiff states that "[a]fter learning of [her] personal issues, . . . Li's behavior toward [her] began to change dramatically," and "he started to express a strong sexual interest in [her]."[7] (*Id.* ¶ 17.) On May 10, 2015, Li asked Plaintiff to go to dinner with him. (*Id.* ¶ 18; Defs. 56.1 ¶ 31.) Using the Oceanside company car, Li picked Plaintiff up at 145th Street and Broadway in Manhattan. (Pl. Aff. ¶ 18.) After parking the car and speaking "for a while" near a park, Li drove Plaintiff to a restaurant in Queens. (*Id.*) Over dinner, Li "offered to get [Plaintiff] a job for which a friend of his was hiring, with increased pay and better career prospects," to which Plaintiff responded that she "would think about it." (*Id.*) After dinner, Li began driving to Long Island, despite Plaintiff's request that he take her back to her home in Manhattan. (*Id.*) Li told Plaintiff that instead of going home, where her "situation with [her] boyfriend was so messy," she "should get a hotel room with [Li] that night." (*Id.*) Li then drove Plaintiff to the water, "put his arm around [her], and suggested repeatedly that [they] 'get a room in a hotel.'" (*Id.*) Plaintiff continued to refuse Li's advances and ask him to take her home. (*Id.*) Instead, Li drove around Long Island, stopping at various hotels and suggesting they check into one together. (*Id.*) Eventually, Li drove Plaintiff back home. (*Id.*)

On the drive to Manhattan, Li told Plaintiff that they "both have sexual needs and . . .

---

[7] The Court notes that Plaintiff's sworn statements that Li expressed sexual interest in her and that he sexually harassed her are all disputed.

could comfort each other." (*Id.*) He also encouraged her to apply directly for a job with Air China, where he "had influential friends . . . and would guarantee that [she] would get the job." (*Id.*) He "suggested that [Plaintiff] . . . rent an apartment in Flushing, Queens, so that he could visit [her] often for sexual encounters," and told her to "cover [her] legs because he could not help thinking about biting them." (*Id.*) Li "boasted that [if] anyone would go against him, their lives would be miserable." (*Id.*) Plaintiff continued to refuse Li's advances, and he "became very angry." (*Id.*)

Plaintiff contends that following the May 10, 2015 incident, "work never felt the same." (*Id.* ¶ 19.) She was "nervous" and "scared" around Li, who she "knew was angry since [she] rejected him," and she "believed that if [she] continued to make him unhappy, he could and would make [her] life miserable." (*Id.*)

Throughout May of 2015, Li continued to make inappropriate and sexual comments to Plaintiff while they were at work, including (1) asking her, on several occasions, to have a sexual relationship with him; (2) telling her that he "would give [her] a 'captain's room free of charge' for [her] to stay in after [she] moved out of [her] residence"; and (3) telling Plaintiff "about the number of women he had sex with, and that when he was dating his first girlfriend, his grandmother told him to be responsible for her," which Plaintiff interpreted to mean that if she agreed to have a relationship with him he would take care of her both at work and in her personal life. (*Id.* ¶¶ 20–22.) Plaintiff continued to refuse Li's advances, and also told him that she "did not want to hear such comments from [her] boss." (*Id.* ¶ 22.)

In late May of 2015, Li "entered the area where [Plaintiff] worked, blocking [her] from leaving," and "asked [her] to allow him to carry [her] on his back," which he said would "alleviate [Plaintiff's] backache." (*Id.* ¶ 25.) Plaintiff told him his comments were

inappropriate, especially in light of his prior sexual advances and her refusals, and "in light of the fact that [she] was wearing a short and delicate dress." (*Id.*) Despite her refusals, Li continued to request that Plaintiff allow him to carry her on his back. (*Id.*)

Due to her continuing concerns about working with Li, in May of 2015, Plaintiff asked her colleague, Zhenmin Liu, to "try to be present and protect [her] when [she] had to work in . . . Li's presence at night," which Liu did, at Plaintiff's request, between May and July of 2015. (*Id.* ¶ 27.)

Plaintiff contends that from May until early July of 2015, Li "frequently visited [Plaintiff] at the front desk . . . looking up and down [her] body and commenting that [she] was sexy and dressed sexy," stating on one occasion that "the lace parts of [her] clothes were 'just like wearing lingerie outside.'" (*Id.* ¶ 28.)

In July of 2015, after learning that Li had "purportedly sold" the items he had agreed to store at the dormitory for her, Plaintiff confronted Li, and told him he "had no right to do that," and that her "items were not for sale." (*Id.* ¶ 29.) Li became angry and said to Plaintiff: "Thank God you were a female. If you were a man, I would not have talked to you so peacefully." (*Id.*) Li also "threatened to damage [Plaintiff's] freezer." (*Id.* ¶ 30.) Plaintiff recorded their conversation. (*Id.* ¶ 29.) Following that conversation, Plaintiff began parking her car in view of a surveillance camera because she feared Li would damage her car. (*Id.* ¶ 30.)

**b. Air China investigation**

In June of 2015, Plaintiff reported Li's conduct to Pengsheng Huang, a co-owner of Oceanside, (*id.* ¶ 26), and in July of 2015, Huang's partner, Gil Yu, sent Huang's complaint reporting Li's conduct, including his alleged harassment of Plaintiff, to Yuelong Zhou, general manager of Air China's New York office, (*id.* ¶ 31). In October of 2015, Huang traveled to

Beijing, China, to formally complain about Li's conduct, including his alleged harassment of Plaintiff. (Defs. 56.1 ¶ 52.) In October or November of 2015, Zhou interviewed Plaintiff in connection with the sexual harassment allegations. (Pl. Aff. ¶ 34; Defs. 56.1 ¶ 53.) Plaintiff contends that the interview was "very brief" and that Zhou "told [her] that since [she] was not forcibly sexually assaulted, it did not count as sexual harassment." (Pl. Aff. ¶ 34.) Plaintiff was also interviewed by a second Air China employee, Mr. Yang,[8] in November of 2015. (*Id.* ¶ 35.)

On November 9, 2015, an Air China staff member interviewed Li. (Interview Tr., annexed Kelton Decl. as Ex. 5, Docket Entry No. 84-5.) Li was asked only one question regarding sexual harassment, to which he responded that "no such incident [had] ever happened," and described the allegations against him as "purely false." (*Id.* at 4.)

Air China's Flight Team Headquarter Discipline Inspection Committee issued a report dated December 10, 2015 finding that Plaintiff had "clearly stated that [Li] has never substantially harassed or physically contacted her, but according to the United States laws, the verbal implication and implication by affiliation relationship are also deemed as harassing behaviors." (Report dated Dec. 10, 2015, annexed to Kelton Decl. as Ex. 8, Docket Entry No. 84-8.) The investigation concluded that under Chinese law, the allegations did not establish that Li has sexually harassed Plaintiff, but recommended that Li be transferred from the Long Beach Property in light of various issues between him and Oceanside management and staff. (*Id.*)

**c.   Termination of Oceanside contract and end of Plaintiff's employment**

In November of 2016, Plaintiff "was told that [she] would no longer be scheduled to work beginning in December." (Pl. Aff. ¶ 46.) On November 4, 2016, Air China exercised its right to

---

[8]   Plaintiff identifies this individual only as "Mr. Yang," and states that his position is "Secretary of the Community Party [O]rganization of Air China." (Pl. Aff. ¶ 35.)

terminate the contract with Oceanside, which, pursuant to the agreement, was effective as of December 4, 2016. (Defs. 56.1 ¶¶ 105, 108.) Air China subsequently entered into an "at will oral agreement with Oceanfront," which had been formed on May 3, 2016. (*Id.* ¶¶ 110, 123.) Plaintiff was not hired by Oceanfront, (*id.* ¶ 101), and contends that "Oceanfront hired back almost all of the former Oceanside staff who worked at the Air China Dormitory, other than [her] and Pengsheng Huang," (Pl. Aff. ¶ 12).

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

**b. Air China's liability under the "joint employer" doctrine**

Air China argues that Plaintiff's claims against Air China cannot survive summary judgment because the undisputed evidence establishes that Air China was not Plaintiff's direct or joint employer. (Air China Mem. 14.) In support, Air China argues that "there is no evidence that Air China exercised any meaningful control over Oceanside's employees," and that the evidence instead shows that Air China "was not involved in hiring, firing, discipline, pay, or provision of benefits to Oceanside employees," and that "these functions were exclusively handled by Oceanside." (*Id.* at 16.)

Plaintiff argues that "the realities of the relationship between Air China and Oceanside demonstrate that Air China maintained total control over [Plaintiff] and Oceanside's other workers." (Pl. Opp'n to Air China Mot. 23.) Plaintiff also argues that Air China had control over Oceanside staff and their working conditions, and was involved in personnel decisions such as hiring, firing, and disciplinary matters. (*Id.* at 23–26.)

While "the existence of an employer-employee relationship is a primary element of Title VII claims," *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006), "recognized doctrines . . . enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer," *Arculeo v. On-Site Sales & Mktg.*, 425 F.3d 193, 197 (2d Cir. 2005); *see also Shiflett v. Scores Holdings Co., Inc.*, 601 F. App'x 28, 30 (2d Cir. 2015). Under the "joint employer" doctrine:

> an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.

*Arculeo*, 425 F.3d at 198 (citing *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)); *Creddille v. MTA NYC Transit Auth.*, Nos. 11-CV-5442, 11-CV-5443, 11-CV-5444, 2014 WL 2917022, at *5 (E.D.N.Y. June 25, 2014), *aff'd*, 626 F. App'x 343 (2d Cir. 2015). While the Second Circuit has "not yet 'fully . . . described a test for what constitutes joint employment in the context of Title VII,' factors courts have used to examine whether an entity constitutes a joint employer of an individual include 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" *Shiflett*, 601 F. App'x at 30 (first quoting *Arculeo*, 425 F.3d at 199 n.7; and then quoting *St. Jean v. Orient–Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013)). Because the "joint employer" doctrine "looks to the relationship between two possible employers when 'an employee' is 'formally employed by one entity,' and seeks to impose liability on another . . . it does not help to answer the antecedent question . . . of whether an individual is an employee of a single . . . entity." *Knight v. State Univ. of N.Y at Stony Brook*, 880 F.3d 636, 642 (2d Cir. 2018) (quoting *Arculeo*, 425 F.3d at 198).

The Court finds that there are genuine issues of fact as to whether Air China jointly employed Plaintiff based on Huang's testimony and Plaintiff's sworn statements. Based on the evidence before the Court, a reasonable jury could find that Li and Air China supervised and managed the employees of Oceanside. Huang testified that Li was the "superior" and "leader" of Huang and Yu, the *de facto* co-owners of Oceanside. (Dep. of Pengsheng Huang ("Huang Dep.") 48:15, annexed to Kelton Decl. as Ex. 27, Docket Entry No. 84-27.) Huang further testified that he "[could] be disciplined, subordinated [and dismissed] by. . . Air China," (*id.* at 269:10–13), and that Li told him that "you guys, every one of you have to listen to me," (*id.* at 293:9–11). According to Huang, "all matters" at the Long Beach Property required Li's "permission." (*Id.* at 374:14–15.) Oceanside employees followed Li's instructions and did not

"dare[] not to obey his orders." (*Id.* at 374:18–375:9.) In her sworn affidavit, Plaintiff contends that she and other Oceanside employees "often had to get approval from Air China personnel to do various tasks," and that "when Li gave directions to [Oceanside] personnel, we understood that those directions came from Air China, and were to be followed." (Pl. Aff. ¶¶ 10, 12.) Plaintiff further contends that Li "directly managed and supervised [her] work, and the work of the other Dormitory personnel," and that Li once stated that he was "a very powerful person," who had "power over [Oceanside employees'] jobs." (*Id.* ¶ 12.)

A reasonable jury could also find that Air China could and did hire, fire, and discipline employees of Oceanside. Huang testified that Air China "ha[d] the authority to fire anybody" at Oceanside and that Huang could not "stop that from happening." (Huang Dep. 361:14–15.) Air China could "tell [Oceanside employees] to just leave, to go away, if they didn't feel they like[d] [them]." (*Id.* at 361:18–20.) According to Huang, Air China could do so because it was Oceanside's "leader." (*Id.* at 361:21–22.) Huang also testified that Air China actually hired or fired Oceanside personnel on several occasions, (*id.* at 192:4–7), and that it was "Air China [that] wanted to fire [Plaintiff]," and not him or Yu, (*id.* at 370:9–10). On February 19, 2016, Yu sent Huang a message, informing him that "Air China had a meeting with me, they proposed to change a person at the front desk, which is to replace [Plaintiff] with a male clerk." (WeChat Message dated Feb. 19, 2016, annexed to Kelton Decl. as Ex. 10, Docket Entry No. 84-10.)

Accordingly, the Court denies Air China's motion for summary judgment as to joint employer liability.

### c.  Oceanfront's successor liability

The Court also finds that a jury could reasonably find Oceanfront liable as the successor to Oceanside.

In determining successor liability in the Title VII context, courts in the Second Circuit have generally applied the substantial continuity test. *Gallo v. Wonderly Co.*, 12-CV-1868, 2014 WL 36628, at *12 (N.D.N.Y. Jan. 6, 2014) ("[T]he substantial continuity test has been consistently applied to Title VII cases in the lower courts." (citing *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 512 (W.D.N.Y. 2007))); *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 403 (S.D.N.Y. 2012) ("Courts in [the Second] Circuit have applied [the substantial continuity] test in, *inter alia*, the Title VII context."); *id.* (collecting cases); *Lamar v. Inst. for Family Health*, No. 09-CV-1154, 2011 WL 2432925, at *7 (N.D.N.Y. June 16, 2011) ("District and appellate courts routinely apply the doctrine of substantial continuity to Title VII cases."), *aff'd*, 472 F. App'x 98 (2d Cir. 2012); *see also Forde v. Kee Lox Mfg. Co.*, 584 F.2d 4, 5–6 (2d Cir. 1978) ("For an employer to be considered a successor there must be 'substantial continuity of identity in the business enterprise before and after a change.'" (quoting *John Wiley & Sons v. Livingston*, 376 U.S. 543, 551 (1964))). "In the context of a Title VII action, successor liability operates as an extra-contractual remedial tool for imposing certain labor obligations on a new employer that has taken over operations of an old employer." *Lamara*, 2011 WL 2432925, at *7 (internal quotation marks omitted) (quoting *Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d at 510).

Under the substantial continuity test, courts look at "three essential factors: (1) whether the successor had notice of the claim prior to the acquisition; (2) whether the successor substantially continued the business operations of its predecessor following the acquisition; and (3) whether the predecessor is able to provide the relief sought." *Gallo*, 2014 WL 36628, at *12 (citing *Lamar*, 2011 WL 2432925, at *7); *see also Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d at 515 (collecting cases). "[N]o one factor is controlling, and it is not necessary that each factor be

met to find successor liability." *Gallo*, 2014 WL 36628, at *12 (quoting *Nicholas Gas & Oil*, 518 F. Supp. 2d at 512).

A reasonable jury could find that (1) Oceanfront had notice of Plaintiff's claim, (2) Oceanfront substantially continued the business operations of its predecessor, Oceanside, and (3) Oceanside is unable to provide the relief sought, and therefore Oceanfront is a successor to Oceanside under the substantial continuity test.

Oceanfront continued the business of Oceanside. Yu testified that Oceanside was a "management company that [took] care of the dormitory at Long Beach for Air China," and had no other business or customers. (Dep. of Oceanside/Hui Yu ("Yu Dep.") 72:21–73:6, annexed to Kelton Decl. as Ex. 31, Docket Entry No. 84-31.) Oceanfront's "[b]usiness stay[ed] the same [as Oceanside's]," and, like Oceanside, Oceanfront had no customers other than Air China and did not manage anything other than the Long Beach Property. (*Id.* at 73:7–15.) Yu helped to form both Oceanside and Oceanfront, (*id.* at 11:11–20, 12:9–17), but both companies were formed under his father's name because his father was judgment proof, (*id.* at 74:16–75:16, 78:18–23).

In addition, Oceanfront had notice of Plaintiff's harassment claims against Li. Yu learned about Plaintiff's allegations that she had been sexually harassed as early as July of 2015. (*Id.* at 87:2–19.) On July 13, 2015, Yu sent an email to Zhou, the general manager of Air China in New York, the subject line of which was "About Li Cong Tao" (the "July 2015 Email"). (July 2015 Email, annexed to Decl. of Jacques Catafago ("Catafago Decl.") as Ex. EE, Docket Entry No. 76-31; *see also* Yu Dep. 104:16–105:10.) Yu wrote to Zhou that "[t]his is what happened in the last few months," and attached a document addressed to "Air China Disciplinary Committee and New York Office," detailing various complaints about Li. (*Id.*) One section of the document,

titled "Sexual harassment and taking petty advantages," described Plaintiff's allegations that Li had sexually harassed her. (*Id.*)

Moreover, because Oceanside's contract with its only client, Air China, was terminated, and there is no indication it has continued any business operations, it likely cannot provide relief to Plaintiff. (*See* Yu Dep. 72:18–73:6 (explaining that Oceanside's business was to manage the Long Beach Property for Air China, and that it never had any other customers).)

Accordingly, the Court denies Oceanfront's motion for summary judgment on the issue of successor liability.

### d. Plaintiff's Title VII claims are not time-barred

Defendants argue that Plaintiff's Title VII claims are time-barred because "aside from the 'alleged retaliatory non-hiring,' all of Plaintiff's allegations of unlawful conduct occurred substantially more than 300 days prior to her EEOC filing." (Air China Mem. 11; Oceanfront Mem. 8.) Defendants further argue that the continuing wrong doctrine does not apply to Plaintiff's claim because "Plaintiff admitted that Li's alleged inappropriate words or conduct ended [in] July 2015" and that Plaintiff's claim that she was "told to eat at her desk . . . does not constitute actionable 'sex harassment.'" (Air China Mem. 11; Oceanfront Mem. 8 & n.2.)

Plaintiff argues that her retaliation claim is not time-barred because the "major retaliatory act — the *de facto* termination and refusal to hire — occurred on November 4, 2016 at the earliest . . . [which is] within the 300-day window." (Pl. Opp'n to Air China Mot. 15.) Plaintiff further argues that her hostile work environment claim is timely because "the evidentiary record contains numerous facts and circumstances within the statutory window that were part of the pattern of hostility at issue." (*Id.*)

Before filing a Title VII action in federal court, a plaintiff must timely file charges of

employment discrimination with the EEOC.  42 U.S.C. § 2000e-5(e)(1); *Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) ("Under Title VII, a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act." (first citing 42 U.S.C. 2000e-5(e)(1); and then citing *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999))).  In New York, a federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 300 days of the alleged discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1)); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).  This requirement is analogous to a statute of limitations.  *Vega*, 801 F.3d at 79; *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (dismissing as untimely claims based on conduct that occurred more than 300 days prior to the filing of EEOC charge).

Plaintiff filed her EEOC Charge on February 8, 2017.[9]  (EEOC Charge, annexed to Kelton Decl. as Ex. 14, Docket Entry No. 84-14.)  Accordingly, any conduct alleged to have taken place before April 14, 2016, falls outside the 300-day window for purposes of Title VII.

### i.    Hostile work environment claim

Under the continuing violation exception, if a plaintiff files a timely EEOC charge "as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of

---

[9]  Plaintiff's EEOC Charge consists of a handwritten EEOC intake questionnaire and a detailed typed statement attached to the questionnaire.  In *Holowecki v. Federal Express Corporation*, 552 U.S. 389 (2008), the Supreme Court held that an EEOC intake questionnaire could be a deemed a charge for the purposes of the Age Discrimination in Employment Act of 1967.  552 U.S. at 401–03.  Courts in this Circuit have adopted the holding in *Holowecki* in the Title VII context.  *See, e.g.*, *Zaza v. Am. Airlines*, No. 14-CV-4046, 2016 WL 11263663, at *6 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, No. 14-CV-4046, 2017 WL 1076327 (E.D.N.Y. Mar. 22, 2017); *Brown v. City of New York*, No. 11-CV-2915, 2013 WL 3789091, at *7–9 (S.D.N.Y. July 19, 2013); *Price v. City of New York*, 797 F. Supp. 2d 219, 224–26 (E.D.N.Y. 2011) (collecting cases).

acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).  For the exception to apply, a plaintiff must challenge at least one act related to the allegedly discriminatory policy within the 300-day limitations period.  *See Patterson*, 375 F.3d at 220 ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."); *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999) (finding that conduct outside the 300-day time period is actionable "only if [the plaintiff] could demonstrate that she was subject to a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period" (citing *Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978))); *Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007) ("Essential to application of the continuing violations theory is the allegation of at least one discrete act of discrimination within the 300 day period.").

    While the continuing violation doctrine will not apply to "discrete acts" of discrimination, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), hostile work environment claims are "different in kind from discrete acts" since "[t]heir very nature involves repeated conduct," and "[t]he 'unlawful employment practice' therefore cannot be said to occur on any particular day," *McGullam*, 609 F.3d at 75.  "Accordingly, consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* (citation and internal quotation marks omitted).  However, actions outside the limitations period must be sufficiently similar in

kind to those within the relevant time period such that the events constitute the "same" hostile work environment. *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (holding that even facially-neutral incidents must be considered in determining whether a hostile work environment exists under Title VII); *McGullam*, 609 F.3d at 77; *see also Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) ("[I]ncidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination — for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.").

A jury could reasonably find that Plaintiff was subjected to at least one act within the 300-day window that was related to the hostile work environment she has alleged. For example, Plaintiff contends that: (1) in July or August of 2016, Li threw away the treadmill that he had agreed to store at the Long Beach Property, and earlier had claimed to have sold, because he was upset she had rejected his sexual advances, (Pl. Aff. ¶ 38); (2) in October of 2016, Li refused to let Plaintiff eat her lunch while she was on duty, as was typically permitted, and became angry and physically aggressive when she told him it was wrong to punish her for rejecting his sexual advances, (*id.* ¶ 44); and (3) in November of 2016, Yu "tried to prevent [Plaintiff] from pursuing [her] claims of sexual harassment," telling her that she could not be successful against such a "strong" company and that Air China was "preparing how to deal with [her]," contributing to her feeling "even less secure at work," (*id.* ¶ 45).

While the alleged acts alone may not constitute a hostile work environment, the Court finds they are sufficiently connected to the pattern of harassment Plaintiff has alleged for the continuing violation doctrine to apply. Accordingly, the Court finds that Plaintiff's hostile work environment claim is not time-barred.

### ii. Retaliation claim

The Supreme Court has held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Chin*, 685 F.3d at 156 (quoting *Morgan*, 536 U.S. at 113). Such discrete acts include termination and refusal to hire. *See Chin*, 685 F.3d at 157 (quoting *Morgan*, 536 U.S. at 114). As Defendants admit, the retaliation Plaintiff alleges — her non-hiring and constructive termination by Oceanfront — occurred within the 300-day window. Accordingly, Plaintiff's Title VII retaliation claim is not time-barred.

### e. Failure to exhaust

Defendants argue that Plaintiff's Title VII claims are "defective" because "[a]s a result of Plaintiff's failure to provide the correct address, Air China [and Oceanfront] never received any communication from the EEOC, and never [were] afforded the opportunity to mediate this dispute." (Air China Mem. 12; Oceanfront Mem. 9.) Defendants further argue that Plaintiff's EEOC Charge is invalid because it is unverified, and should not be considered by the Court. (Air China Mem. 12; Oceanfront Mem. 9.)

In response, Plaintiff argues that "Air China had actual notice of the EEOC proceedings," and that the allegedly incorrect address listed for Air China "was a direct result of [its] failure to . . . correct publicly available information . . . or . . . contact the EEOC to ensure the accuracy of [its] records." (Pl. Opp'n to Air China Mot. 17–18.) Plaintiff further argues that the Court should excuse Plaintiff's failure to name Oceanfront, given the "context of this case," including Air China's relationship with Oceanfront and Oceanside. (Pl. Opp'n to Oceanfront Mot. 16.) Finally, Plaintiff argues that the lack of a formal verification is not fatal to her "*pro se* Charge [that] is otherwise appropriate in all respects." (Pl. Opp'n to Air China Mot. 19.)

### i. Notice of EEOC Charge and Right to Sue Letter

Pursuant to Title VII, "[w]henever a charge is filed by . . . a person . . . alleging that an employer . . . has engaged in an unlawful employment practice, the [EEOC] shall serve a notice of the charge . . . on such employer . . . within ten days, and shall make an investigation thereof." 42 U.S.C. § 2000e-5(b). As the language of the statute makes clear, it is the EEOC's obligation to provide the employer with notice of the charge, not the individual filing the charge. The statute further provides that "if within [180] days from the filing of such charge . . . the [EEOC] has not filed a civil action . . . [or] entered into a conciliation agreement to which the person aggrieved is a party," the EEOC "shall so notify the person aggrieved," who may then bring a civil action within ninety days. 42 U.S.C. § 2000e-5(f)(1). In other words, as relevant here, the language of the statute conditions the right to sue on an individual having filed a charge with the EEOC, and then having received notice of her right to sue — not on the EEOC having served notice of the charge on the employer.

In support of its argument that Plaintiff's failure to provide the EEOC with accurate information ultimately prevented Air China from mediating this dispute before the EEOC, Air China makes a number of statements that the Court finds to be either inaccurate or misleading. Air China's contention that Plaintiff provided the wrong name to the EEOC is clearly contradicted by Plaintiff's EEOC Charge, which names "Air China, Limited" as one of the organizations she believes has discriminated against her. (EEOC Charge 1.) Air China asserts that Plaintiff "falsely lists Air China as having an address of East 52nd Street, New York, New York, despite Wang's actual knowledge . . . [that] the correct address for [its] New York office [is] . . . 350 Fifth Avenue, New York, New York," which Air China argues is apparent from a draft complaint from February of 2016 that Plaintiff never filed, and the Complaint filed in this

action.  (Air China Mem. 9.)  However, Plaintiff *did* provide the 350 Fifth Avenue address in her EEOC Charge, in the detailed typed statement attached to her handwritten EEOC Intake Questionnaire form.  (EEOC Charge 6 (listing Air China's address as 350 5th Avenue, Suite 6905, New York, NY 10118).)[10]  As to the address listed on the EEOC Intake Questionnaire, in a sworn affidavit submitted in support of her opposition to Air China's motion to dismiss, Plaintiff states that "[w]hen preparing [her] EEOC charge, the EEOC Investigator and [she] looked up Air China's address on the Internet."  (Pl. Aff. in Opp. to Air China Mot. to Dismiss ("Pl. MTD Aff.") ¶ 4, annexed to Kelton Decl. as Ex. 21, Docket Entry No. 84-21.)  In addition, in its effort to characterize Plaintiff's actions as intentionally misleading, Air China fails to acknowledge that the address Plaintiff listed is only one digit removed from its service of process address registered with the New York Secretary of State, (NYS Dep't of State Entity Information, annexed to Catafago Decl. as Ex. B, Docket Entry No. 76-2 (listing service of process address as 150 East 42nd Street, New York, NY 10017)), suggesting a mistake rather than an intentional effort by Plaintiff to prevent Air China from learning of the EEOC proceedings.  Taken together, these circumstances indicate that Plaintiff made a good faith effort to provide the EEOC with the necessary information to contact Air China.

Oceanfront similarly asserts that Plaintiff's failure to exhaust her administrative remedies is "proven by . . . no EEOC Right to Sue Letter ever being issued or sent to Oceanfront." (Oceanfront Mem. 9 (emphasis omitted).)  Oceanfront asserts that "Plaintiff was aware of the correct name and address for Oceanfront . . . but inexplicably furnished no address information regarding Oceanfront . . . to the EEOC," and that "[d]ue only to Plaintiff's failure to provide the

---

[10]  Plaintiff's EEOC Charge consists of an EEOC Intake Questionnaire and a detailed typed statement.  (*See* EEOC Charge.)  Because the attachment is not paginated, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

EEOC with Oceanfront's correct address, Oceanfront never received any communication from the EEOC." (*Id.* at 9.) As a result, Oceanfront contends, it "was never afforded the opportunity to mediate this dispute." (*Id.* at 10.)

In her EEOC Charge, Plaintiff identified two entities she believed had discriminated against her, one of which was "LB Oceanside, LLC." (EEOC Charge 1.) In both her handwritten EEOC Intake Questionnaire and the attached typed statement, Plaintiff listed the Long Beach Property address for Oceanside.[11] (*Id.* at 1, 6.) As discussed above, the Court finds that a jury could reasonably find that Oceanfront is subject to liability for Plaintiff's claims as a successor to Oceanside. Accordingly, Plaintiff's failure to name Oceanfront in her EEOC Charge does not constitute a failure to exhaust her administrative remedies.

The Court further finds that a jury could reasonably find that Air China and Oceanfront had actual notice of Plaintiff's EEOC Charge. Plaintiff states in her sworn affidavit that "during the summer of 2017, Air China's counsel contacted [her] to inquire about the EEOC proceedings, of which he was apparently already aware." (Pl. MTD Aff. ¶ 4.) Plaintiff further states that she "informed Air China's counsel that [she] had initiated the proceedings on February 8, 2017, and suggested that he contact the EEOC for a copy of the paperwork." (*Id.*) In a signed declaration submitted in connection with Air China's motion to dismiss in this action, counsel for Air China confirms that while representing Air China in a separate state court action, he became aware that Plaintiff had filed a grievance against Air China with the EEOC. (Reply Decl. of Jacques Catafago in Supp. of Air China Mot. to Dismiss ("Catafago MTD Decl.") ¶ 7, annexed to Catafago Decl. as Ex. LLL.) On August 8, 2017, counsel for Air China served

---

[11] While one digit in the handwritten street address is slightly difficult to read, at least as produced to the Court, the typed address makes clear that Plaintiff listed the correct address of the Long Beach Property.

Plaintiff with a subpoena to produce various documents, including any information regarding her EEOC complaint, which Plaintiff initially refused to comply with until she retained counsel. (*Id.* ¶¶ 8–9.) Counsel for Air China states that he attempted to reach the EEOC to learn more about the Charge, but was "unable to reach anyone in the agency or address the charges with the agency." (Catafago MTD Decl. ¶ 9.) When Plaintiff eventually received a Right to Sue Letter from the EEOC, she texted a copy of it to Air China's counsel. (Pl. MTD Decl. ¶ 5; Catafago MTD Decl. ¶ 10.) Based on this record, the Court determines that a jury could reasonably find that Air China had notice of Plaintiff's EEOC Charge.

The Court similarly finds that there are disputed issues of fact as to whether Oceanfront had actual notice of Plaintiff's EEOC Charge. Based on the evidence in the record regarding the close relationships between Air China, Oceanside, and Oceanfront, as well as Oceanside's relationship with Oceanfront, the Court finds that a jury could reasonably find Oceanfront, through Air China or Oceanside, had actual notice of Plaintiff's EEOC Charge.

The Court further finds that Defendants have not demonstrated, for purposes of summary judgment, that they were prejudiced by any claimed lack of notice.

### ii. Verification

Title VII requires that "[c]harges shall be in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b); *Price v. City of New York*, 797 F. Supp. 2d 219, 225 (E.D.N.Y. 2011) ("Title VII regulations require that '[a] charge shall be in writing and signed and shall be verified.'" (citing 29 C.F.R. § 1601.9)). The purpose of the verification requirement is to "protect[] employers from the disruption and expense of responding to a claim unless a complainant was serious enough to support it by oath subject to liability for perjury." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002). In *Edelman*, the Supreme Court recognized the

object of the verification requirement, but observed that "[i]n requiring the oath or affirmation . . . Congress presumably did not mean to affect the nature of Title VII as 'a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Id.* at 115 (quoting *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988)).

While Plaintiff's EEOC Charge does not include a formal verification, it is signed and dated, and includes a detailed, typed statement of Plaintiff's allegations. (*See* EEOC Charge.) Plaintiff met with an EEOC investigator to fill out the Intake Questionnaire, (*see* Pl. MTD Aff. ¶ 4), and checked the box on the Intake Questionnaire indicating, in part, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above," (EEOC Charge 5). Taken together, these facts demonstrate that Plaintiff was sufficiently serious about filing her EEOC Charge. While Defendants argue that they were prejudiced by the lack of verification, the only prejudice they point to is the EEOC's failure to notify Air China of the EEOC Charge, based on Plaintiff's failure to provide the correct address for Air China. (Air China Mem. 13.) A jury could reasonably find that this was merely a ministerial error, and thus does not go to the concerns addressed by verification, as outlined in *Edelman*.

Accordingly, the Court denies Defendants' motion as to their arguments that Plaintiff has failed to exhaust her administrative remedies.

### f. Title VII and NYSHRL sexual harassment claims

Air China argues that Plaintiff's sexual harassment claims cannot survive summary judgment because the record demonstrates that (1) no "individual incident . . . was 'extraordinarily severe,'" (2) "Li's alleged misconduct was not pervasive," and (3) "Plaintiff, herself, did not perceive the work environment to be hostile or abusive." (Air China Mem. 21, 23.)

Plaintiff asserts that her "sex discrimination claims survive whether they are analyzed under either a *quid pro quo* or hostile work environment theory." (Pl. Opp'n to Air China Mot. 27.) In support, she argues that Air China "imposed its supervisor," Li, on Plaintiff, and that Li in turn "incessantly made sexual innuendo," as well as "overt sexual advances," and retaliated against Plaintiff when she rejected him. (*Id.* at 28.) In addition, Plaintiff argues that when she complained about the alleged harassment, those complaints were not taken seriously by Air China, and that this "hostile environment . . . had a significant detrimental effect" on Plaintiff and "ruined" her "feelings of safety and contentment at work." (*Id.* at 28–29.)

Sexual harassment claims can be pursued under two legal theories: (1) *quid pro quo* sexual harassment, where an individual's tangible job benefits are directly premised on submission to unwelcome sexual conduct, and (2) hostile work environment, where an individual is subject to severe and pervasive discriminatory conduct altering her conditions of employment. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) ("Although the terms 'quid pro quo' and 'hostile work environment' do not appear in the text of Title VII, they are useful to distinguish between 'cases involving a threat which is carried out and offensive conduct in general.'" (quoting *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004))); *see also Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 181–82 (E.D.N.Y. 2012) (citing *Gregory v. Daly*, 243 F.3d 687, 698 (2d Cir. 2001)) (noting that there is no reason to distinguish between *quid pro quo* and hostile work environment harassment under Title VII); *Richards v. N.Y.C. Dep't of Homeless Servs.*, No. 05-CV-5986, 2009 WL 700695, at *5 (E.D.N.Y. Mar. 15, 2009) (examining a plaintiff's claims of sexual discrimination under hostile work environment and *quid pro quo* theories of sexual harassment); *Gonzalez v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 349–50 (S.D.N.Y. 2003) (stating that since the enactment of Title VII in 1964, sex

discrimination theories of *quid pro quo* and hostile work environment have become well-established).  To the extent that the two theories of discrimination arise from a plaintiff's allegations, both theories may be considered in analyzing the same claim.  *See Reid*, 876 F. Supp. 2d at 182 (considering the plaintiff's "claim of quid pro quo harassment as part of her claim that she was subject to a hostile work environment by virtue of [the defendant's] conduct").

Because, as discussed below, the Court finds that a jury could reasonably find that Plaintiff has established her sexual harassment claims when analyzed under a hostile work environment theory, the Court declines to analyze the claims under a *quid pro quo* theory.

To establish a Title VII hostile work environment claim, a plaintiff must "show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)); *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n. 4 (2d Cir. 2014) ("The same standards [as are applied to Title VII] apply to the plaintiffs' hostile environment claims arising under the NYSHRL . . . ."); *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013) ("Hostile work environment claims under both [federal law] and the NYSHRL are governed by the same standard." (citing *Schiano*, 445 F.3d at 609)).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019)

(quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). A plaintiff must also show

"that the complained of conduct . . . creates such an environment because of the plaintiff's"

protected characteristic. *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 782 (2d Cir.

2019) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). The Second Circuit has

cautioned that:

> While the standard for establishing a hostile work environment is
> high, we have repeatedly cautioned against setting the bar too high,
> noting that [w]hile a mild, isolated incident does not make a work
> environment hostile, the test is whether the harassment is of such
> quality or quantity that a reasonable employee would find the
> conditions of her employment *altered for the worse*.

*Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (alteration in original) (citation and internal

quotation marks omitted). A court should consider the totality of the circumstances and factors

such as "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with [the] employee's work performance." *Boonmalert v. City of New York*, 721 F. App'x 29, 33

(2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 320–21; *Patane*, 508 F.3d at 113. In evaluating

whether a plaintiff has established a hostile work environment claim, the court must consider

facially neutral conduct that might "bolster a harassment claim" when the facially neutral

conduct is by the same individual who engaged in "overt[]" discrimination. *See Daniel v. T&M*

*Prot. Res., LLC*, 689 F. App'x 1, 3 (2d Cir. 2017) (citing *Kaytor*, 609 F.3d at 547–48)

(remanding with instructions to the district court to consider facially neutral incidents of

harassment in analyzing the plaintiff's hostile work environment claim).

      To hold an employer liable for a hostile work environment, "federal law requires the

plaintiff to show 'a specific basis for imputing the conduct creating the hostile work environment

to the employer.'" *Bentley*, 935 F.3d at 90 (quoting *Summa*, 708 F.3d at 124). "Two such bases

exist: strict vicarious liability if an employer's supervisor has created the hostile environment; and negligence if a co-worker who is not a supervisor has created the environment, and the employer, upon becoming aware of the misconduct fails to remedy it." *Id.* (first citing *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015); and then citing *Summa*, 708 F.3d at 124).

After assessing the totality of the alleged conduct, the relevant factors, and the Second Circuit's caution against "setting the [hostile work environment] bar too high," *Terry*, 336 F.3d at 148, the Court concludes that a jury could reasonably find that Plaintiff has established a sexual harassment hostile work environment claim. A reasonable jury could find that Li, as a supervisor for Air China, made repeated, unwanted sexual advances toward Plaintiff and created an environment that was both objectively and subjectively abusive.

Li testified that he was a "manager of the Air China facility," i.e. the Long Beach Property. (Li Dep. 82:2–3.) Huang testified that "all matters" at the Long Beach Property required getting Li's "permission." (*Id.* at 374:14–15.) In her sworn statement, Plaintiff states that as "Air China's manager of the dormitory, . . . Li directly managed and supervised her work, and the work of the other Dormitory personnel." (Pl. Aff. ¶ 12.)

In addition, Plaintiff states that over the course of at least three months, Li (1) suggested she live with him, (2) asked her to travel with him, (3) expressed a strong sexual interest in her, (4) asked her, on several occasions, to have a sexual relationship with him, (5) discussed his sexual relationships with other women, and (6) made comments of a sexual nature about her body and her clothing. (Pl. Aff. ¶¶ 13–14, 17–18, 20–22, 28.) Plaintiff further states that, on one occasion, Li took her to dinner and asked her to share a hotel room with him. (*Id.* ¶ 18.) Even after she refused and asked him to take her home, Li refused to take her home and instead drove

her around to various hotels, told her that they "both have sexual needs and . . . could comfort each other," suggested she rent an apartment where "he could visit [her] often for sexual encounters," and told her to "cover [her] legs because he could not help thinking about biting them." (*Id.*) Plaintiff contends that, on another occasion, Li "blocked [Plaintiff] from leaving" her work area and continuously suggested that she "allow him to carry [her] on his back" to relieve her back pain, despite refusing his request and telling him that she thought his "suggestion was inappropriate," especially "in light of his prior sexual demands . . . and in light of the fact that [she] was wearing a short and delicate dress." (*Id.* ¶ 25.) Plaintiff asserts that, on various occasions, Li became angry that she refused his advances and punished her for her refusals. (*Id.* ¶¶ 18–19, 29–30.) As discussed above, some of this asserted conduct occurred after April 14, 2016. (*See id.* ¶ 44 (stating that Li refused to let Plaintiff eat lunch while on duty as punishment for Plaintiff rejecting his sexual advances); *id.* ¶ 38 (stating that in July or August of 2016, Li threw out Plaintiff's treadmill because he was upset that she had rejected his sexual advances).) Drawing all inferences in favor of Plaintiff, the non-movant, the Court finds that a jury could reasonably find that these acts were related to the course of discriminatory conduct that Plaintiff has alleged prior to April 14, 2016.

Plaintiff states in her sworn statement that as a result of Li's conduct, "work never felt the same," and that she was "very nervous" and "often scared" around Li. (*Id.* ¶ 6.) In addition, Plaintiff argues that Air China's failure to take Plaintiff's complaint seriously further contributed to the hostile work environment. (*See, e.g.*, *id.* ¶ 34 (stating that when Zhou, the general manager of Air China's New York officer, interviewed Plaintiff about her sexual harassment complaint, he told her that her allegations did not constitute sexual harassment because she "was not forcibly sexually assaulted," and that this contributed to the fear and hostility Plaintiff

experienced at work).)

Accordingly, the Court finds that a jury could reasonably find that Plaintiff has established sexual harassment hostile work environment claims under Title VII and the NYSHRL, and denies Defendants' motions as to these claims.

### g. Title VII and NYSHRL retaliation claims

Defendants argue that Plaintiff's retaliation claims must fail because she cannot satisfy any of the three elements of a *prima facie* case for retaliation. (Air China Mem. 25–29; Oceanfront Mem. 12–17.) Oceanfront further argues that even if the Court finds that Plaintiff has established her *prima facie* case, her claims still fail because Oceanfront had "legitimate grounds not to hire . . . Plaintiff." (Oceanfront Mem. 18.)

Plaintiff argues that she has presented sufficient facts to raise a triable issue with respect to her retaliation claim," both as to her *prima facie* case of retaliation and as to Defendants' contention that there were legitimate and non-pretextual reasons for Oceanfront not to hire her. (Pl. Opp'n to Air China Mot. 29; Pl. Opp'n to Oceanfront Mot. 21.)

Title VII and NYSHRL retaliation claims are assessed using the *McDonnell Douglas* burden-shifting framework. *Littlejohn*, 795 F.3d at 315 ("Retaliation claims under Title VII . . . are . . . analyzed pursuant to . . . the *McDonnell Douglas* burden-shifting evidentiary framework." (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010))); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (same); *see also Holcomb v. State Univ. of N.Y. at Fredonia*, 698 F. App'x 30, 31 (2d Cir. 2017) ("Title VII . . . and NYSHRL claims for retaliation are . . . 'analyzed pursuant to Title VII principles.'" (quoting *Hicks*, 593 F.3d at 162, 164)). Under this framework, the plaintiff must first establish "a *prima facie* case of retaliation." *Russell v. N.Y.U.*, 739 F. App'x 28, 32 (2d Cir. 2018) (quoting *Hicks*, 593 F.3d at 164). If the

plaintiff sustains this initial "*de minimis*" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (quoting *Hicks*, 593 F.3d at 164). "If the defendant does so, then the burden shifts back to the plaintiff . . . [to] show that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'" *Id.* (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90–91).

### i. *Prima facie* case

To establish a *prima facie* case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Russell*, 739 F. App'x at 32 (quoting *Hicks*, 593 F.3d at 164).

### 1. Protected activity and Defendants' knowledge

Defendants argue that "[b]ecause Air China is not Plaintiff's employer or 'joint employer,'" the harassment Plaintiff alleges is not covered by Title VII, and "[t]herefore, neither the July 2015 reporting of the alleged harassment nor Plaintiff's participation in Air China's internal investigation of the alleged harassment qualify as a participation in a 'protected activity.'" (Air China Mem. 25; *see also* Oceanfront Mem. 12–13.) In addition, Oceanfront argues that Plaintiff cannot show she participated in a protected activity because "Plaintiff's refusal of her friend Li's off-premises, after-hours clumsy pass cannot substitute actionable

sexual harassment," and Plaintiff's complaint about those same allegations and her participation in the subsequent investigation cannot constitute participation in a protected activity. (Oceanfront Mem. 12.)

In response, Plaintiff points to the "formal complaint . . . made to Air China [in October of 2015] about . . . Li's sexual harassment of [Plaintiff]," and Air China's interview of Plaintiff in connection to its investigation of Li, in which Plaintiff "reiterated the ongoing and pervasive harassment." (Pl. Opp'n to Air China Mot. 29.)

Filing either a formal or informal complaint challenging discrimination is a protected activity for purposes of retaliation claims under Title VII. *See Jagmohan v. Long Island R. Co.*, 622 F. App'x 61, 63 (2d Cir. 2015); *Summa*, 708 F.3d at 126. "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." *Jagmohan*, 622 F. App'x at 64–65 (citing *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *Summa*, 708 F.3d at 126 (holding that Title VII "protects employees [who] . . . make[] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" (alterations in original) (quoting *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001))).

Defendants arguments are unpersuasive. As discussed above, the Court finds that (1) there are disputed issues of fact as to whether Air China was Plaintiff's joint employer, and (2) that Li's alleged conduct constitutes actionable sexual harassment under Title VII. The evidence supports a finding that Plaintiff reported Li's alleged harassment to Huang, one of the *de facto* owners of Oceanside, in June of 2015. (Pl. Aff. ¶ 26; Huang Dep. 29:5–17.) Oceanside

informed Air China management in writing of Plaintiff's allegations, (July 2015 Email), and Air China investigated the claim, (Defs. 56.1 ¶ 50; Pl. Resp. to Defs. 56.1 ¶ 50, Docket Entry No. 85 (disputing the adequacy of the investigation but not that it took place)). Plaintiff was interviewed by Air China in connection with the investigation and discussed the allegations that Li had sexually harassed her. (Tr. of Air China Interview of Pl., annexed to Catafago Decl. as Ex. FF, Docket Entry No. 76-32.) Plaintiff's complaints to management of both Oceanside and Air China about the alleged harassment, of which Defendants were clearly aware, constitute protected activity for purposes of Title VII.

## 2. Adverse employment action

Defendants argue that Plaintiff was not subject to an adverse employment action because (1) "*none* of the terms and conditions of Plaintiff's employment at Oceanside changed from July 2015 (the date of her grievance) through the November 2016 termination of Oceanside's at will contract." (Air China Mem. 26; Oceanfront Mem. 13.) Air China further argues that its termination of its contract with Oceanside cannot "constitute an adverse employment action *as against Plaintiff*." (Air China Mem. 26.)

Plaintiff argues that the "major retaliatory act" was the "*de facto* termination [of] and refusal to hire" Plaintiff. (Pl. Opp'n to Air China Mot. 15.)

In contrast to discrimination claims, an adverse employment action in the retaliation context is one that a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 57); *Fincher*, 604 F.3d at 721 (same). The scope of actions that may be materially adverse is broader for purposes of retaliation claims than for discrimination claims. *See Hicks*, 593 F.3d at 165 (citing

*Burlington*, 548 U.S. at 67).  In evaluating whether an action is materially adverse, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (citation omitted); *see also Hicks*, 593 F.3d at 165 (noting that even minor acts that would be immaterial in some situations may be material in others).

The Court finds that, for the purposes of summary judgment, Plaintiff has established that she was subject to an adverse employment action.  As discussed above, a reasonable jury could find Oceanfront to be a successor to Oceanside.  It is undisputed that after Air China terminated its management contract with Oceanside, it entered into an identical agreement with Oceanfront, and that the two companies — Oceanside and Oceanfront — had substantially overlapping ownership and management.  It is also undisputed that Plaintiff was employed by Oceanside, and then subsequently was not re-hired by Oceanfront.  The Court finds that a jury could reasonably find that Plaintiff suffered a *de facto* termination, a clear adverse employment action.

### 3.    Causal connection

Defendants argue that even if the Court finds Plaintiff can satisfy the first two elements of a *prima facie* case for retaliation, the Court should still grant summary judgment on Plaintiff's claims "because she cannot demonstrate a causal connection between any protected activity and any adverse employment action."  (Air China Mem. 26; Oceanfront Mem. 13.)  In support, Defendants argue that "there is no evidence that Air China terminated the management contract with Oceanside because of Air China's retaliation against Plaintiff," and that the evidence instead shows that Air China terminated the contract due to Oceanside's failure to comply with various laws, as well as "major personnel conflicts" caused by Huang.  (Air China Mem. 27–28; Oceanfront Mem. 14–15.)  In addition, Defendants contend that the nearly year-and-a-half period

between Plaintiff's complaint about the alleged harassment and the alleged termination further undermines the argument that there is a causal connection between the two. (Air China Mem. 28; Oceanfront Mem. 15–16.)

In response, Plaintiff argues that there are triable issues of fact as to whether she has demonstrated a causal connection between her complaint of harassment and her later *de facto* termination. (Pl. Opp'n to Air China Mot. 29.) Plaintiff further argues that Defendants' arguments regarding the timing of the alleged events ignore Yu's admission, as well as Huang's testimony, that Air China delayed terminating Plaintiff because they were busy dealing with other matters, including a law enforcement investigation. (*Id.* at 30 & n.14.)

A causal connection of retaliation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory actions directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 307, 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). "Verbal comments may constitute direct evidence of discrimination when made by a decisionmaker in the adverse employment action, and where there is a close nexus between the comments and the action." *Silverio v. United Block Ass'n, Inc.*, No. 13-CV-5001, 2015 WL 221151, at *8 (S.D.N.Y. Jan. 14, 2015) (quoting *Messer v. Bd. of Educ. of N.Y.C.*, 01-CV-6129, 2007 WL 136027, at *14 (E.D.N.Y. Jan. 16, 2007)). Indirect evidence may include a "showing that the protected activity was closely followed in time by the adverse action." *Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 287 (S.D.N.Y. 2013) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)); *see also Feingold*, 366 F.3d at 156–57 ("[T]he requirement that [the

plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two." (collecting cases)); *Nonnenmann v. City of New York*, 02-CV-10131, 2004 WL 1119648, at \*22 (S.D.N.Y. May 20, 2004) ("Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999))).

The Court agrees with Plaintiff that there are triable issues of fact as to whether Plaintiff can establish a causal connection between her participation in a protected activity and Oceanfront's eventual decision not to hire her. There is evidence in the record to suggest, for example, that Li, on behalf of Air China, told Yu to consider replacing Plaintiff with a male employee, (WeChat Message dated Feb. 19, 2016; Yu Dep. 46:15–47:8), that Yu told Plaintiff that Oceanfront was formed in order to terminate her and Huang, (Pl. Aff. ¶ 42; *see also* Huang Dep. 281:13–22 (testifying that Oceanfront was formed "as a conspiracy between" his former partner, Yu, and Zhou, of Air China)), and that Yu told Plaintiff that Air China had decided to find a way to terminate Plaintiff as early as February of 2016, when Plaintiff had expressed to Yu that she would "pursue [her] legal rights if [she] suffered retaliation for reporting . . . Li's sexual harassment," (Pl. Aff. ¶ 49).

Accordingly, the Court finds that a jury could reasonably find that Plaintiff has established a *prima facie* case of retaliation.

### ii. Defendants' nonretaliatory reasons

Defendants have shown nonretaliatory reasons for Plaintiff's *de facto* termination. As to the decision not to hire Plaintiff, Oceanfront has pointed to various nonretaliatory reasons, including, *inter alia*, her participation in unlawful sales of merchandise at the Long Beach

Property and other performance issues. (*See, e.g.*, Defs. 56.1 ¶¶ 118–19.) As to the termination of the Oceanside contract, Air China has put forth evidence that Oceanside was in violation of various laws and regulations, and that Huang was causing personnel issues as well as engaging in unlawful activity. (*Id.* ¶¶ 118–21.)

### iii. Pretext

The Court finds that there are triable issues of fact as to whether Defendants' nonretaliatory reasons for Plaintiff's *de facto* termination are pretext for retaliation. For example, Plaintiff states that neither Oceanside nor Air China ever expressed issues with her performance during her employment, (Pl. Aff. ¶ 50 (stating that "[p]rior to [her] reporting . . . Li's conduct . . . nobody complained to [her] about [her] job performance . . . [or] ever indicate[d] that either Oceanside or Air China was looking to replace [her]").) Huang testified that prior to Plaintiff's complaint, neither Yu nor anyone from Air China had ever expressed an issue with Plaintiff's performance. (Huang Dep. 376:4–14.) Taken together with the evidence discussed above that Defendants sought to terminate Plaintiff at Li's request, and replace her with a male employee, the Court finds that this evidence of pretext could lead a reasonable jury to conclude that Plaintiff's *de facto* termination was because of her complaint alleging she had been sexually harassed by Li.

Accordingly, the Court denies Defendants' motions for summary judgment as to Plaintiff's Title VII and NYSHRL retaliation claims.

### h. NYCHRL claims

Defendants argue that Plaintiff's NYCHRL claims cannot survive summary judgment because "there is no evidence, and Plaintiff does not allege, that any discriminatory conduct occurred or had an impact in New York City," and therefore Plaintiff "cannot . . . establish the

requisite nexus to New York City." (Air China Mem. 30; *see also* Oceanfront Mem. 20.)

In response, Plaintiff argues that "[c]ourts start their analysis with the threshold question of whether a plaintiff lived or worked in New York City," and that "the numerous City-related facts set forth in [Plaintiff's] Affidavit, and in [her Opposition] are sufficient to establish" that her claims are covered by the NYCHRL. (Pl. Opp'n to Air China Mot. 30–31.)

"Under the NYCHRL, the impact of the employment action must be felt *by the plaintiff* in [New York City]." *Vangas v. Montefiore Medical Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) (citing *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011)); *see also Robles v. Cox & Co., Inc.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) ("To state a claim under the NYCHRL, the [p]laintiff must allege that the [d]efendant discriminated against her 'within the boundaries of New York City.'" (quoting *Shah v. Wilco Sys., Inc.*, 806 N.Y.S.2d 553, 558 (1st Dep't 2005))). "[W]here the alleged discriminatory act takes place outside of New York City, the relevant location of the injury for purposes of the impact analysis is not the Plaintiff's residence, but the Plaintiff's place of employment." *Robles*, 841 F. Supp. 2d at 625.

Plaintiff states that when she began working for Oceanside, in 2014, she lived in New York City. (Pl. Aff. ¶ 3.) She further statets that in October of 2015, she moved to a new residence, also in New York City. (*Id.* ¶ 33.) Defendants point to the Complaint and Plaintiff's EEOC charge as evidence that Plaintiff is a resident of Suffolk County, not New York City. (Defs. Reply 26–27; EEOC Charge (listing a Suffolk County address); Compl. ¶ 10 (alleging that Plaintiff resides in Suffolk County).) In addition to her statements about her residency, Plaintiff asserts that some portion of the alleged sexual harassment occurred in New York City. (*See* Pl. Aff. ¶ 14 (stating that on at least one occasion, Li asked Plaintiff, while driving from Long Beach, New York to Flushing, Queens, to go on vacation with him); *id.* ¶ 18 (stating that Li

picked her up from her up in Harlem and took her to dinner in Flushing, Queens, and then alleging that "while . . . driving back to New York City," Li made comments to Plaintiff about their sexual needs and about his "influential friends" at Air China who could give her a job, suggested she rent an apartment so they could have sexual encounters, and told her to cover her legs because he could not stop thinking about biting them); *id.* ¶ 13 (stating that Li often asked Plaintiff to accompany him on trips using the Oceanside company car to shop for supplies in Queens).)

The Court finds that Plaintiff's retaliation claim lacks the necessary nexus to New York City that is required under the NYCHRL. The alleged retaliation — Plaintiff's *de facto* termination — occurred on Long Island, outside of New York City. Termination is a discrete discriminatory act. *See Robles*, 841 F. Supp. 2d at 623 ("Because termination is a discrete act, the Plaintiff must sufficiently allege that her discriminatory termination, standing alone, violated the NYCHRL."). Because the relevant location for purposes of the impact analysis is Plaintiff's place of employment, not her residence, the impact of the claimed termination was felt on Long Island, outside the boundaries of New York City. Accordingly, the Court grants Defendants' summary judgment motion as to Plaintiff's retaliation claim under the NYCHRL.

As to Plaintiff's sexual harassment claim, Plaintiff's statements are admittedly a little unclear as to how much of the asserted discriminatory conduct, if any, took place in New York City. However, drawing all inferences in favor of the non-movant, the Court concludes that a jury could reasonably find that the impact of the asserted sexual harassment was felt in New York City. Accordingly, the Court considers whether Plaintiff's NYCHRL sexual harassment claim survives summary judgment.

As explained above, the Court denies Defendants' motions as to Plaintiff's Title VII and

NYSHRL sexual harassment claims. Because the NYCHRL is "more liberal" than its federal and state counterparts, *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)), the Court denies Defendants' motion as to these claims under the NYCHRL. *See Zann Kwan v. Andalex Grp.*, 737 F.3d 834, 843 n.3 (2d Cir. 2013) ("[T]o the extent that the defendant has failed to show it is entitled to summary judgment [under Title VII], it would not be entitled to summary judgment under the more expansive standard of the NYCHRL."); *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017) ("[T]here is no doubt that the standard for proving a NYCHRL hostile work environment claim is lower than the standard for proving . . . NYSHRL hostile work environment claims.").

      i.   **Aiding and abetting claims**

    Defendants argue that Plaintiff's aiding and abetting claims against Air China and Oceanfront under the NYSHRL and the NYCHRL "ignore[] that [Plaintiff] released with prejudice all claims against the individual that she alleges supposedly harmed her," which "operates to release at least in part the purported state and city law claims against [Defendants]." (Air China Mem. 30–31 (citing NY-GOL § 15-108); Oceanfront Mem. 20–21 (citing NY-GOL § 15-108).) Air China further argues that aiding and abetting claims require there to be an underlying violation, and therefore since Plaintiff's underlying discrimination and retaliation claims must fail, so must her aiding and abetting claims. (Air China Mem. 31.) Air China also argues that Plaintiff's aiding and abetting claims must be dismissed because "Air China cannot be held liable . . . for aiding and abetting its own violation of the Human Rights Law." (*Id.* at 31.) Oceanfront further argues that the Court should grant summary judgment as to Plaintiff's aiding and abetting claims against Oceanfront because "Oceanfront was not even in existence at

the time the alleged aiding and abetting occurred with respect to the harassment and discrimination." (Oceanfront Mem. 20.)

In response, Plaintiff argues that Defendants' contention that Plaintiff's release of claims against Li "is an admission requiring any liability to be reduced . . . ignore[s] [both] the well-settled premise of *respondeat superior* . . . [and] that agreeing to discontinue claims against . . . Li does not constitute an admission of any fact." (Pl. Opp'n to Air China Mot. 31–32.) Plaintiff further argues that her discontinuation of claims against Li is inadmissible pursuant to Rules 402 and 408 of the Federal Rules of Evidence because (1) "it is not a statement of fact" and (2) "evidence of compromising a claim is inadmissible." (*Id.* at 32.) As to Oceanfront's argument that it cannot be liable for aiding and abetting because it was not in existence at the time of the alleged discrimination, Plaintiff argues that this position ignores Plaintiff's claim that Oceanfront is liable as the successor to Oceanside. (Pl. Opp'n to Oceanfront Mot. 23.)

The Court finds Defendants' arguments unpersuasive. As discussed above, the Court denies Defendants' summary judgment motion as to Plaintiff's NYSHRL claims and her NYCHRL sexual harassment claim, and therefore Air China's argument that the aiding and abetting claims must be dismissed because there is no underlying violation fails. Similarly, the Court rejects Oceanfront's argument that it cannot be liable for violations that took place before its formation because, as discussed above, the Court finds that a jury could reasonably find Oceanfront liable as a successor to Oceanfront.

As to Defendants' argument that their liability for Plaintiff's aiding and abetting claims is reduced due to her dismissal of her claims against Li, the Court finds Defendants' reliance on New York General Obligations Law § 15-108 to be misplaced. Defendants cite to only two cases in support of this proposition, neither of which address or are relevant to the employment

discrimination context. (Air China Mem. 31 (first citing *Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 430–31 (E.D.N.Y. 2009) (finding that section 15-108 would "bar any claim for contribution" under New York Civil Practice Law and Rules section 1401 against co-defendants "provided that they enter[ed] into settlement agreements with and obtained releases from the plaintiffs, where the contribution claims [were] derivative of the state claims sounding in tort, contract, statutory violations, fraud and/or negligence"); and then citing *Banks Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2000 WL 1364272, at *1 (S.D.N.Y. Sept. 20, 2000) (denying motion to dismiss fault allocation defenses and finding that defendants could raise section 15-108 defenses as to state law claims for, *inter alia*, aiding and abetting conversion and aiding and abetting fraud)).) The Court agrees with Plaintiff that Defendants' argument cannot be reconciled with the *respondeat superior* doctrine that is the basis for any liability attributed to Air China for Li's alleged harassment of Plaintiff.

In addition, Air China argues that it "cannot be held liable . . . for aiding and abetting its own violation of the Human Rights Law," (Air China Mem. 31), but Plaintiff has alleged that Air China aided and abetted Oceanfront (not itself) in violating of the NYSHRL and NYCHRL, (*see* Compl. ¶¶ 106–09).

Accordingly, the Court denies summary judgment as to the aiding and abetting claims.

### j. Punitive damages

Defendants argue that Plaintiff's claims for punitive damages should be dismissed because "it is well settled that sex harassment claims under the NYSRHL do not provide for punitive damages." (Air China Mem. 31; Oceanfront Mem. 21.) Plaintiff "does not oppose dismissal of any claim for punitive damages under the NYSHRL." (Pl. Opp'n to Oceanfront Mot. 24.) Accordingly, the Court grants Defendants' unopposed motion as to Plaintiff's claims

for punitive damages under the NYSHRL.

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions for summary judgment as to Plaintiff's claims for retaliation under the NYCHRL and for punitive damages under the NYSHRL, and denies Defendants' motions for summary judgment as to Plaintiff's claims for sexual harassment under Title VII, the NYSHRL, and the NYCHRL, for retaliation under Title VII and the NYSHRL, and for aiding and abetting under the NYSHRL and the NYCHRL.

Dated: March 9, 2020
      Brooklyn, New York

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge
